OPINION
{¶ 1} Defendant-appellant Willie C. Atkinson appeals from his conviction and sentence, following a bench trial, for Driving Under the Influence of Alcohol. Atkinson was also convicted of a marked lane violation, but it does not appear that he is appealing from that conviction.
 {¶ 2} Atkinson argues that the trial court erred by denying his motion to suppress evidence, and that his subsequent conviction, following a bench trial, is against the manifest weight of the evidence. We conclude that the arresting officer had probable cause to arrest Atkinson for DUI, and to request a blood alcohol test. We further conclude that the evidence at Atkinson's trial, when viewed in a light most favorable to the State, supports Atkinson's conviction for DUI, and that his conviction is not against the manifest weight of the evidence. Accordingly, the judgment of the trial court is Affirmed.
 I {¶ 3} Trotwood police officer Valerie Turner was in a marked police cruiser, southbound on Olive Road, at about 8:00 p.m. one evening in January, 2003, when she noticed the car being driven by Atkinson, in front of her, go left of the yellow center line twice. Turner ran the license plate, and determined that there was a felony warrant outstanding for the owner of the car.
 {¶ 4} Initially, Turner was inclined to wait for backup before stopping Atkinson, but by the time she got to State Route 49, she decided to stop Atkinson, "because he was not driving very well." She effected the stop, but waited for backup before confronting Atkinson. She observed Atkinson "shoving stuff under the seat." Concerned about the possibility that Atkinson might have access to weapons, Turner, and backup officers who had, by this time, arrived, ordered Atkinson back to their vehicles. Turner could smell alcohol on Atkinson's person. She characterized this odor as "strong." Atkinson's speech was slow and slurred, and he had bloodshot eyes.
 {¶ 5} Turner handcuffed Atkinson, who kept arguing about the felony warrant. Turner did not want to uncuff Atkinson for a field sobriety test.
 {¶ 6} One of the other officers, an Officer McGill, inventoried Atkinson's vehicle, preparatory to towing it, and found under the front seat an open beer container and a crack pipe. The beer container was cold and half full. It was underneath the seat, "like he tried to shove it under there." The drug paraphernalia was next to the beer bottle, and other drug paraphernalia was found in the trunk of the car.
 {¶ 7} Turner testified that she had observed other people whom she knew to be under the influence of alcohol and drugs, and had observed the "same things" she observed in Atkinson's case. She concluded that Atkinson was under the influence of alcohol, drugs, or both, and arrested him both pursuant to the outstanding arrest and for DUI.
 {¶ 8} After Atkinson was taken to the police station, Turner wanted a urine test, because she thought that Atkinson might also be under the influence of drugs. She testified that Atkinson "continually would ask me the same questions and was very slow in nature and his reactions." Turner testified that after crossing the yellow center line twice on Olive Road, Atkinson crossed the yellow center line at least twice while driving on State Route 49.
 {¶ 9} Turner testified that Atkinson initially refused to take the test, but about five minutes later changed his mind, and asked if he could take the test. Officer McGill went with Atkinson to the restroom at the police station, where according to Turner, Atkinson decided he did not want to take the test after all. He was recorded as having refused the test.
 {¶ 10} Upon cross-examination, Turner testified that traffic was light at the time; that the first time Atkinson crossed the yellow line, there was a car coming in the opposite direction; that Atkinson "swerved" back into his lane, and that Atkinson "swerved again," but that there was no car coming in the opposite direction that time. Turner testified that there was beer in the can, which she and McGill poured out. Turner could not remember seeing Atkinson stagger, and did not notice any balance problems.
 {¶ 11} At the suppression hearing, Atkinson called Daryl Garrison, an acquaintance of his, to testify, and also testified himself. Garrison and Atkinson testified that they had been doing some carpentry on some doors from about 3:00 to 7:30 that day, before Atkinson dropped Garrison at Garrison's home. They both testified that Atkinson had not been drinking, and had no odor of alcohol.
 {¶ 12} Atkinson testified that he had called his wife on his cell phone while he was driving, and this caused him to "kind of swerve a little." He testified that he never really crossed the center line, and that there was only one incident, in any event. Atkinson testified that after this, he put the cell phone down and used both hands on the wheel, realizing that there was a police cruiser behind him.
 {¶ 13} Atkinson confirmed that he initially refused the test, but that after he read the form, and realized he could lose his license, he changed his mind and decided to take it. He testified that two officers went with him to the restroom, and were shouting at him, with the result that he could not urinate. He testified that he thought they would let him calm down and try again, but that this did not happen.
 {¶ 14} On cross-examination, Atkinson admitted that he could not remember a lot of details from that evening. He also acknowledged that it was his car that he was driving, and that if any beer or drug paraphernalia were in the car, they would have been his. He denied having obtained or consumed any beer that evening, and testified that the beer could have been from a much earlier time.
 {¶ 15} Following this hearing, the trial court denied Atkinson's motion to suppress. A bench trial occurred two months later. At the bench trial, in addition to the facts established at the suppression hearing, one of the officers who escorted Atkinson to the restroom at the police station testified as follows:
 {¶ 16} "Q. Okay. And tell us what occurred then in the restroom that you observed?
 {¶ 17} "A. While he was standing there Mr. Atkinson said that he had to sit down to use to [sic] bathroom, and Officer McGill obliged him of that and said, `That's strange, but fine. If that will make you go, fine sit down and use the bathroom.' Once Mr. Atkinson sat down his arm dipped down as if he was trying to stick it in the bowl and contaminate the container that he was asked to urine [sic] in.
 {¶ 18} "MS. GAINES [representing Atkinson]: Objection. That's an opinion.
 {¶ 19} "THE COURT: The Court will permit about the hand dipping down and the other will be sustained and disregarded.
 {¶ 20} "MR. FUCHSMAN [representing the State]: That's fine.
 {¶ 21} "BY MR. FUCHSMAN:
 {¶ 22} "Q. Go ahead.
 {¶ 23} "A. Mr. Atkinson's hand dipped down, at the time Mr. McGill said, `Don't put that in that water. Stand up. You have to stand up and go now.'
 {¶ 24} "* * *
 {¶ 25} "THE WITNESS: And he told him he would have to stand up and use the stand up urnal [sic]. At which time Mr. Atkinson stood up and he claimed that he couldn't use the restroom. Officer McGill gave him ample time, and Officer McGill told him, `Okay. You've had a chance.' And we escorted him back.
 {¶ 26} "Q. Officer, there was a motion to suppress hearing here, and at that time Mr. Atkinson took the stand and testified that the officers were either yelling at him or badgering him regarding taking the test. Did any of that ever occur?
 {¶ 27} "A. Other than Officer McGill telling him not to move around with his hand and telling him that he had to stand up, no. It did not take place.
 {¶ 28} "Q. Did you ever yell at Mr. Atkinson?
 {¶ 29} "A. No, I did not.
 {¶ 30} "Q. Did you ever challenge Mr. Atkinson?
 {¶ 31} "A. No, I did not."
 {¶ 32} Also admitted in evidence at the trial, supplementing the evidence that had been received at the suppression hearing, was Valerie Turner's testimony that three-fourth's of Atkinson's car went left of the yellow center line the first time it crossed the center line, with another car coming in the opposite direction, while somewhat less than half of the car went left of the center line the second time, when there was no car coming in the opposite direction. Also at the trial, Turner testified that the container of beer found under Atkinson's seat was a can with a Budweiser label, and that the substance contained therein smelled like beer.
 {¶ 33} At the conclusion of the State's evidence, Atkinson moved to dismiss the charges, for failure of proof. This motion was denied. At the conclusion of the trial, following closing arguments, the trial court found Atkinson guilty of DUI. Later, he was sentenced accordingly.
 {¶ 34} From his conviction and sentence for DUI, Atkinson appeals.
 II {¶ 35} Atkinson's First Assignment of Error is as follows:
 {¶ 36} "The trial court erred by overruling defendant's motion to suppress the evidence since there was no probable cause to arrest him for driving under the influence."
 {¶ 37} Atkinson cites State v. Spillers (March 24, 2000), Darke App. No. 1504, and State v. Beagle, 2003-Ohio-4331, for the proposition that the evidence adduced at the suppression hearing failed to establish the existence of probable cause justifying Atkinson's arrest for DUI. The State first argues that no probable cause for Atkinson's arrest for DUI was necessary, since Atkinson was subject to arrest, and was, in fact, arrested, on an outstanding felony warrant. That argument would be persuasive if the only issue involved was the propriety of Atkinson's arrest for DUI. However, Atkinson was also required to submit to a urine test for the presence of alcohol in his body, subject to a license-suspension sanction upon refusal. In our view, probable cause to believe that Atkinson was operating a motor vehicle under the influence was necessary to request him to submit to the urine test, separate and apart from the probable cause needed to arrest him.
 {¶ 38} Although the issue is close, we conclude that Turner had probable cause to believe that Atkinson was operating his motor vehicle under the influence of alcohol. In State v.Spillers, supra, the defendant was not observed to cross the yellow center line. Indeed, the defendant and one other witness testified at the suppression hearing in that case that the defendant did not cross any lines. Because the trial court in that case granted the motion to suppress, without rendering specific findings of fact, we were required to presume that this conflict in testimony was resolved in that defendant's favor, as the prevailing party. Furthermore, in that case, the odor of alcohol noticed by the arresting police officer was characterized as "slight," rather than "strong," and there was no testimony concerning slurred speech or bloodshot eyes. Finally, inSpillers, supra, the arresting officer testified that after the initial lane violations that he claimed to have observed, he continued to follow the defendant over several roads, over a route that included several stop signs, one railroad crossing, and at least one turn, and saw neither any further traffic violations, nor anything remarkable about the defendant's driving.
 {¶ 39} Similarly, we conclude that this case is distinguishable from State v. Beagle, supra. In Beagle, the defendant had been observed crossing the right lane line, "by a tire's width," two times, coming "very close" to hitting a vehicle in the adjacent lane. The defendant in that case had an odor of alcohol, but there was no slurred or mumbled speech, and no bloodshot or red eyes.
 {¶ 40} Although the facts in Beagle, supra, are admittedly close to the facts in the case before us, we conclude that the distinctions are critical. In the case before us, Atkinson crossed the yellow center line by an amount that was not specified at the suppression hearing, although that amount was established to be by three-fourths of the width of his vehicle at the trial. Also, in the case before us, there was testimony concerning Atkinson's slow, slurred speech, and his bloodshot eyes. Those observations, together with the strong odor of alcohol, and the discovery of a half-full beer can and a crack pipe under Atkinson's seat, constituted probable cause justifying Atkinson's arrest for DUI, and the request that he submit to the urine test.
 {¶ 41} Atkinson's First Assignment of Error is overruled.
 III {¶ 42} Atkinson's Second Assignment of Error is as follows:
 {¶ 43} "The trial court erred by overruling appellant's rule 29 motion at the close of the state's case and the conviction is against the manifest weight of the evidence."
 {¶ 44} As the State notes, at the trial, besides the evidence supporting a finding of probable cause, there was evidence that Atkinson had refused a urine test. The refusal to take a chemical test for the presence of alcohol is significant. City ofWesterville v. Cunningham (1968), 15 Ohio St.2d 121. This evidence, combined with Turner's having observed Atkinson cross the yellow center line on at least four occasions, the first of which was by the amount of three-fourth's of the width of Atkinson's vehicle, at a time when a car was coming in the opposite direction, and the strong odor of alcohol, slow, slurred speech and bloodshot eyes, together with the half full Budweiser can under Atkinson's seat, containing a substance that smelled like beer, when viewed in a light most favorable to the State, supports a conclusion, beyond reasonable doubt, that Atkinson was driving his vehicle while under the influence.
 {¶ 45} Atkinson did not testify in his own defense at the trial, although his acquaintance, Daryl Garrison, did, reprising his testimony at the suppression hearing. Garrison acknowledged that he was dropped off at about 7:30, and that he did not know what Atkinson may have done after that.
 {¶ 46} The only other defense witness was Mary Cook, Atkinson's substance abuse counselor at Project Cure. Her testimony established that Atkinson had provided a urine specimen on January 27, 2003, twelve days after his arrest for DUI, and that the test was negative. However, Cook acknowledged that the drugs Project Cure tested for would only be detected three to seven days after ingestion, with seven days being the outside limit. She acknowledged that the test twelve days after the alleged offense "really doesn't tell the Judge one way or the other whether or not [Atkinson] had drank alcohol or taken heroin on January 15th."
 {¶ 47} Based upon the evidence in the record, we conclude that Atkinson's conviction for DUI is not against the manifest weight of the evidence, and is supported by the evidence. Atkinson's Second Assignment of Error is overruled.
 IV {¶ 48} Both of Atkinson's assignments of errors having been overruled, the judgment of the trial court is Affirmed.
Brogan and Wolff, JJ., concur.