[Cite as *State v. Thomas*, 2011-Ohio-1987.]

IN THE COURT OF APPEALS FOR CLARK COUNTY, OHIO

STATE OF OHIO                                     :

    Plaintiff-Appellee                         :            C.A. CASE NO. 2010 CA 48

v.                                                        :            T.C. NO.    10CR42

KEITH R. THOMAS                            :            (Criminal appeal from
                                              Common Pleas Court)

    Defendant-Appellant                       :

                                                          :

. . . . . . . . . .

**O P I N I O N**

Rendered on the ____22nd____ day of ____April____, 2011.

. . . . . . . . . .

ANDREW R. PICEK, Atty. Reg. No. 0082121, Assistant Prosecuting Attorney, 50 E. Columbia Street, 4th Floor, P. O. Box 1608, Springfield, Ohio 45501
    Attorney for Plaintiff-Appellee

RYAN SHANE REED, Atty. Reg. No. 0084670, P. O. Box 158, Hilliard, Ohio 43026
    Attorney for Defendant-Appellant

. . . . . . . . . .

DONOVAN, J.

{¶ 1}  Defendant-appellant Keith R. Thomas appeals his conviction for two counts of operating a vehicle while under the influence of alcohol or drugs (OVI), in violation of R.C. 4511.19(A)(1)(a) and 4511.19(A)(2), a felony of the fourth degree.

I

**{¶ 2}** In the early morning hours of January 12, 2010, Officers Duwayne Hush and Matt Parr of the Springfield Police Department were on patrol on the southwest side of Springfield, Ohio, when they observed a vehicle driven by Thomas parked on the west side of Western Avenue, facing southbound. As the officers approached in their cruiser, they observed the driver of the subject vehicle make an illegal u-turn and then proceed westbound on High Street at a high rate of speed. Officer Hush testified that they began following the vehicle down High Street. The officers also ran the vehicle's license plate and were advised that they needed to confiscate the plates on behalf of the Bureau of Motor Vehicles (BMV). Officer Hush activated the flashing lights on his cruiser and attempted to initiate a traffic stop.

**{¶ 3}** Thomas eventually pulled his vehicle over in the parking lot of a Speedway Gas Station, and the officers pulled up behind him. Having been alerted over the radio, Officer Roger Jenkins pulled in behind Officers Hush and Parr in a separate vehicle in order to assist with the stop. After exiting his cruiser, Officer Parr observed that there were four individuals in the subject vehicle including the driver, Thomas. Officer Parr testified that upon approaching the vehicle he detected the strong odor of alcohol coming from Thomas. Officer Parr asked for his driver's license, and Thomas admitted that his license had been suspended. Officer Parr then asked Thomas to step out of the vehicle.

**{¶ 4}** Since Thomas was wearing a bulky winter coat, Officer Parr patted him down for weapons. While Officer Parr did not find any weapons, he did discover an open, partially consumed bottle of beer in Thomas' left breast pocket. Officer Parr testified that he placed the open beer bottle on the roof of the vehicle and moved Thomas towards his

cruiser.

**{¶ 5}** Officer Jenkins testified that while Thomas was speaking with Officer Parr, he detected the strong odor of alcohol on Thomas' breath as he spoke. Additionally, Officer Jenkins testified that he observed that Thomas' eyes were glassy and bloodshot, that he was unsteady on his feet and had trouble maintaining his balance, and that his speech was slurred.

**{¶ 6}** After Officer Parr led Thomas back to the front of his cruiser, he conducted a the horizontal gaze nystagmus (HGN) field sobriety test on Thomas. Although he testified that he was not sure that he turned off the flashing lights on his cruiser on this specific occasion, Officer Parr stated that it was normal operating procedure to turn off the lights during the test since it could affect the performance of the individual being tested. During the performance of the HGN test, Officer Parr noted lack of smooth pursuit, nystagmus at maximum deviation, and nystagmus prior to forty-five degrees in each eye for a total of six clues. Officer Parr opined, that based upon all of the foregoing, that the Defendant was impaired. Officer Parr asked Thomas to submit to additional field sobriety tests, but Thomas refused.

**{¶ 7}** Thomas was subsequently arrested for operating a vehicle while intoxicated and transported to the Clark County Jail. Thomas later refused a breathalyzer test at the jail. In light of their observations during the stop, Officers Parr and Jenkins both testified that they believed Thomas was intoxicated.

**{¶ 8}** On January 19, 2010, Thomas was indicted for two counts of OVI, in violation of R.C. 4511.19(A)(1)(a) and 4511.19(A)(2). On January 22, 2010, Thomas plead

not guilty to the charged offenses.

{¶ 9} After a jury trial held on May 3, 2010, Thomas was found guilty of both counts in the indictment. Additionally, the jury found that Thomas had previously been convicted of at least three violations of R.C. 4511.19(A) or (B) within the last six years of the instant offense. At sentencing on May 5, 2010, the State elected to proceed on Count 2 in the indictment, the violation of R.C. 4511.19(A)(2). The court sentenced Thomas to thirty months in prison and ordered him to pay a fine of $1,350.00. The court also suspended Thomas' driver's license for ten years.

{¶ 10} It is from this judgment that Thomas now appeals.

II

{¶ 11} Thomas' first assignment of error is as follows:

{¶ 12} "DEFENDANT WAS DENIED HIS CONSTITUTIONALLY GUARANTEED RIGHT TO EFFECTIVE ASSISTANCE OF COUNSEL THROUGH COUNSEL'S FAILURE TO FILE A COLORABLE MOTION TO SUPPRESS EVIDENCE."

{¶ 13} In his first assignment, Thomas contends that he received ineffective assistance when his trial counsel failed to file a motion to suppress prior to trial. Thomas argues that the evidence established that Officer Parr failed to substantially comply with the standards set forth by the National Highway Traffic Safety Administration (NHTSA) when he performed the HGN field sobriety test on Thomas. Specifically, Thomas asserts that since the evidence did not conclusively establish that Officer Parr turned off his cruiser's flashing lights while he administered the HGN test to Thomas, the results of the test were

unreliable. Accordingly, Thomas argues that had his counsel filed a motion to suppress the results of the HGN test, the court would have granted the motion and he would not have been prejudiced at trial by the admission of the evidence.

{¶ 14} To reverse a conviction based on ineffective assistance of counsel, an appellant must demonstrate both that trial counsel's conduct fell below an objective standard of reasonableness and that the errors were serious enough to create a reasonable probability that, but for the errors, the result of the trial would have been different. *Strickland v. Washington* (1984), 466 U.S. 668, 688, 104 S.Ct. 2052, 80 L.Ed.2d 674; *State v. Bradley* (1989), 42 Ohio St.3d 136. Trial counsel is entitled to a strong presumption that his or her conduct falls within the wide range of reasonable assistance. *Strickland*, 466 U.S. at 688. Deficient performance means that claimed errors were so serious that the defense attorney was not functioning as the "counsel" that the Sixth Amendment guarantees. *State v. Cook* (1992), 65 Ohio St.3d 516, 524.

{¶ 15} "The failure to file a suppression motion is not per se ineffective assistance of counsel. *State v. Madrigal*, 87 Ohio St.3d 378, 389, 721 N.E.2d 52, 2000-Ohio-448. Rather, trial counsel's failure to file a motion to suppress constitutes ineffective assistance of counsel only if the failure to file the motion caused Defendant prejudice; that is, when there is a reasonable probability that, had the motion to suppress been filed, it would have been granted." (Citations omitted.) *State v. Wilson,* Clark App. 08CA0445, 2009-Ohio-2744, ¶11. See, also, *State v. Nields*, 93 Ohio St.3d 6, 34, 2001-Ohio-1291.

{¶ 16} As previously stated, Thomas asserts that the HGN test performed by Officer Parr was not administered in accordance with the regulations promulgated by the NHTSA

because his performance was negatively affected by the flashing strobe lights atop Officer Parr's cruiser. NHSTA regulations direct that a suspect should be faced away from the flashing lights when the HGN test is conducted. In the instant case, Officer Parr testified that he conducted the HGN test at the front of his cruiser with Thomas facing towards the hood of the vehicle. Officer Parr further testified that it was standard procedure to turn off the cruiser's flashing lights before conducting the test, but he could not remember whether he had done so when he performed the HGN test on Thomas. Officer Parr testified that he was aware that the flashing lights could affect the testing. Officer Parr acknowledged that had he, in fact, left the flashing lights on during the test, the results of the tests indicating that Thomas was intoxicated would be unreliable since he would have been directly facing the lights.

{¶ 17} Initially, we note that defense counsel's failure to file a motion to suppress the result of the HGN test may have been a matter of reasonable trial strategy, which does not constitute deficient performance. *State v. King*, Montgomery App. No. 18463, 2002-Ohio-2929, citing *State v. Shaw* (1999), 134 Ohio App.3d 316, 320. While Officer Parr candidly testified that he did not remember whether he turned off the overhead flashing lights, he did state it was his standard operating procedure to do so when administering the HGN test to an OVI suspect. Based on Officer Parr's testimony regarding his normal procedure, it is possible that the trial court would have found that the officers conducted the test in substantial compliance with NHTSA regulations and overruled a motion to suppress.

{¶ 18} Simply put, filing a motion to suppress is not without risks, and the likelihood of success of such a motion was not a given in this case. *State v. Brown*, 115 Ohio St.3d 55,

69, 2007-Ohio-4837. At a suppression hearing, Officer Parr's testimony may have necessitated Thomas to testify regarding the circumstances surrounding the administration of the HGN test. This could have, in turn, provided the State with potential impeachment evidence if Thomas chose to testify at trial. Thus, a reasonable strategy, instead of filing a motion to suppress with its inherent risks, was to question the reliability of the HGN test before the jury, which, in fact, defense counsel did.

{¶ 19} Moreover, even if Thomas' counsel had filed a motion to suppress the results of the HGN test *and* the trial court granted the motion, we cannot find that the result of the trial would have been any different because the State presented overwhelming evidence of Thomas' guilt, in addition to the results of the HGN test. Officer Parr testified that he observed Thomas make an illegal u-turn before he pulled him over. Officer Parr also testified that he discovered an open, partially consumed bottle of beer in Thomas' breast pocket upon searching him for weapons. Officer Jenkins testified that he detected the strong odor of alcohol on Thomas' breath after he exited his vehicle and spoke to the officers. Officer Jenkins further testified that Thomas was unsteady on his feet and had trouble maintaining his balance. Thomas' eyes were also bloodshot and glassy. Officers Parr and Jenkins both testified that based upon their observations, Thomas was under the influence of alcohol. Accordingly, given the overwhelming evidence of Thomas' guilt, aside from the results of the HGN test, we cannot say that had defense counsel filed a motion to suppress, there is a reasonable probability that Thomas would have been acquitted.

{¶ 20} Thomas' first assignment of error is overruled.

III

**{¶ 21}** Thomas' second and final assignment of error is as follows:

**{¶ 22}** "THE JURY'S VERDICT SHOULD BE REVERSED AS APPELLANT'S CONVICTION IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."

**{¶ 23}** In his final assignment, Thomas argues that his conviction for OVI was against the manifest weight of the evidence. Specifically, he asserts that the State adduced no evidence that he was driving recklessly or erratically before he was pulled over. Thomas also argues that the smell of alcohol testified to by Officer Parr could have come from any of the other three occupants of the vehicle who were all drinking on the morning in question. Lastly, Thomas argues that Officer Parr's testimony regarding the results of the HGN test prejudicially influenced and confused the jury.

**{¶ 24}** "When an appellate court analyzes a conviction under the manifest weight of the evidence standard it must review the entire record, weigh all of the evidence and all the reasonable inferences, consider the credibility of the witnesses and determine whether in resolving conflicts in the evidence, the fact finder clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. (Internal citations omitted). Only in exceptional cases, where the evidence 'weighs heavily against the conviction,' should an appellate court overturn the trial court's judgment." *State v. Dossett*, Montgomery App. No. 20997, 2006-Ohio-3367, ¶ 32.

**{¶ 25}** The credibility of the witnesses and the weight to be given to their testimony are matters for the trier of facts to resolve. *State v. DeHass* (1997), 10 Ohio St.2d 230, 231. "Because the factfinder * * * has the opportunity to see and hear the witnesses, the cautious exercise of the discretionary power of a court of appeals to find that a judgment is against the

manifest weight of the evidence requires that substantial deference be extended to the factfinder's determinations of credibility. The decision whether, and to what extent, to credit the testimony of particular witnesses is within the peculiar competence of the factfinder, who has seen and heard the witness." *State v. Lawson* (Aug. 22, 1997), Montgomery App. No. 16288.

{¶ 26} This court will not substitute its judgment for that of the trier of facts on the issue of witness credibility unless it is patently apparent that the trier of fact lost its way in arriving at its verdict. *State v. Bradley* (Oct. 24, 1997), Champaign App. No. 97-CA-03.

{¶ 27} After a thorough review of the record, we find that Thomas' convictions for OVI are not against the manifest weight of the evidence. The credibility of the witnesses and the weight to be given their testimony are matters for the jury to resolve. Thomas presented only minimal evidence in the form of the testimony of Amber Martin, who simply maintained that Thomas was not under the influence of alcohol when he was pulled over. She also testified that the police did not turn off the flashing lights when they administered the HGN test on Thomas. The jury did not lose its way simply because it chose to believe the State's witnesses, namely Officers Parr and Jenkins. As stated in the prior assignment, the State presented overwhelming evidence of Thomas' guilt, aside from the results of the HGN test. Having reviewed the entire record, we cannot clearly find that the evidence weighs heavily against a conviction, or that a manifest miscarriage of justice has occurred.

{¶ 28} Thomas' final assignment of error is overruled.

IV

{¶ 29} All of Thomas' assignments of error having been overruled, the judgment of

the trial court is affirmed.

. . . . . . . . . .

GRADY, P.J. and HALL, J., concur.

Copies mailed to:

Andrew R. Picek
Ryan Shane Reed
Hon. Douglas M. Rastatter