[Cite as *State v. Reynolds*, 2014-Ohio-3642.]

IN THE COURT OF APPEALS

SECOND APPELLATE DISTRICT OF OHIO

GREENE COUNTY


| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| | | CASE NO. 2012-CA-64 |
| Plaintiff-Appellee, | : | |
| | | O P I N I O N |
| | : | |
| - vs - | : | |
| | : | |
| SEAN R. REYNOLDS, | : | |
| | | |
| Defendant-Appellant. | : | |


CRIMINAL APPEAL FROM GREENE COUNTY COURT OF COMMON PLEAS
Case Nos. 12 CR 161 and 11 CR 178


Steven K. Haller, Greene County Prosecuting Attorney, Nathaniel R. Luken, 61 Greene Street, Xenia, Ohio 45385, for plaintiff-appellee

Cicero Law Office, Lori R. Cicero, 500 East Fifth Street, Dayton, Ohio 45402, for defendant-appellant



**M. POWELL, J.**

{¶ 1} Defendant-appellant, Sean Reynolds, appeals his conviction in the Greene County Court of Common Pleas for operating a vehicle while under the influence of alcohol. For the reasons stated below, we affirm the decision of the trial court.

{¶ 2} On the afternoon of March 26, 2011, appellant was involved in an automobile

accident. Appellant was traveling westbound in a red Jeep on a four-lane rural highway when he struck a van from behind that was stopped at a red light. In attempting to stop, appellant's vehicle veered sideways, hit the van, and then flipped on its side. Several vehicles were involved in the collision as the force of the accident pushed the van into the other vehicles stopped at the intersection.

{¶ 3} Appellant suffered injuries as a result of the accident and was transported to the hospital by ambulance. While at the hospital, an Ohio State Highway Patrol Officer administered the Horizontal Gaze Nystagmus (HGN) test and determined appellant was intoxicated. Appellant refused to submit to a blood alcohol content test and no other field sobriety tests were conducted due to his injuries. On April 15, 2011, in Case No. 2011 CR 178, appellant was indicted on two counts of operating a vehicle while under the influence of alcohol (OVI) in violation of R.C. 4511.19(A)(1)(a) and R.C. 4511.19(A)(2), with specifications that the offenses would be felonies in the fourth degree because appellant had at least five OVI convictions in the past 20 years.

{¶ 4} Appellant moved to suppress the results of the HGN test. A hearing was held regarding the motion to suppress where State Highway Patrol Sergeant Frank Simmons testified regarding his investigation of the collision and the administration of the HGN test. Simmons administered the test in appellant's hospital room approximately three and one-half hours after the collision. Appellant demonstrated six out of six clues for intoxication as a result of the test. Simmons stated that appellant's hospital room smelled of alcohol and his eyes were bloodshot and glassy. The trial court overruled appellant's motion to suppress.

{¶ 5} After appellant's motion to suppress was denied, the state dismissed the indictment without prejudice on February 14, 2012. A second indictment was filed on April 20, 2012, Case No. 2012 CR 161, alleging the same charges. The case proceeded to a jury trial where several

witnesses testified.

{¶ 6} Bryan Freshour testified that he was stopped at a red light when he observed in his rear-view mirror a red Jeep coming from behind him at a high rate of speed. According to Freshour, several cars were stopped behind him and he "heard the screech and * * * a collision, another collision, and then [he] felt a little nudge in [his] rear end, which put [him] a little out into the intersection." Several other witnesses also testified they saw a red Jeep traveling at a high rate of speed toward the intersection, attempt to stop, veer to the side, and then collide with the vehicles stopped at the red light.

{¶ 7} Kelly Christman, a registered nurse at Miami Valley Hospital, treated appellant after the collision. Christman testified that appellant's medical records indicated he smelled of alcohol and he "refused labs." The record also stated appellant "could be discharged if he had a sober ride." Christman explained she wrote in the record at 6:07 p.m., "patient has a sober ride waiting for him in the waiting room. Patient to be discharged after done speaking with Ohio State Patrol." On cross-examination, Christman acknowledged that under the "Psychiatric" section of the record it states, "affect normal, judgment normal, mood normal" and that the record stated "patient was alert and oriented and appropriate but did smell of alcohol." Christman also admitted she would require patients that were given morphine to have a "sober ride" home and that she would not be surprised to learn that appellant had been given morphine in the ambulance on his way to the hospital.

{¶ 8} Simmons testified at trial regarding his investigation of the crash scene and his interaction with appellant at the hospital. He explained that based on the measurement of the skid mark left by appellant's vehicle, he estimated appellant's speed prior to braking to be 71 miles per hour. Simmons also explained that at the hospital he obtained a written statement from appellant in

which he stated he had a couple of beers prior to the accident and was distracted because he was talking on his cell phone. As in the suppression hearing, Simmons testified appellant smelled of alcohol, his eyes were bloodshot and glassy, and he demonstrated six out of six clues of intoxication under the HGN test. Simmons explained that when four or more clues are observed from the HGN test, the blood alcohol content of the subject is likely to be .10 and the accuracy rate of the HGN test is 71% to 77%. Appellant also refused to submit to a blood alcohol test even though Simmons made him aware that the refusal would result in an immediate driver's license suspension. On cross, Simmons acknowledged dust and other irritants can cause bloodshot eyes and that the airbag in the appellant's vehicle deployed out of the steering wheel.

{¶ 9} Michael Ransdell, a Beavercreek Township Fire Department paramedic and firefighter, responded to the accident scene and treated appellant. Ransdell testified appellant was strapped into the driver's seat by his seat belt and the paramedics cut the seatbelt and removed appellant through the windshield. Appellant had an ankle injury and was strapped to a backboard for transportation to the hospital via ambulance. During transit, Ransdell administered five milligrams of morphine, the maximum amount he was authorized to administer to appellant.

{¶ 10} The jury trial lasted for two days. On the first day of trial, Judge Buckwalter presided over the proceedings. Judge Wolaver presided over the second day of trial. The jury found appellant guilty of both OVI counts. After trial, the case was transferred back to Judge Buckwalter for sentencing. However, on October 5, 2012, Judge Wolaver was reassigned to the case for sentencing. Appellant filed a motion for mistrial and an objection to the imposition of sentence based on the transfer of the case between Judge Wolaver and Judge Buckwalter.

{¶ 11} On November 14, 2012, Judge Wolaver presided over appellant's sentencing hearing. The trial court overruled appellant's motion for a mistrial and objection to the imposition

of sentence.  In regards to sentencing, the state elected to proceed on the first count, OVI in violation of R.C. 4511.19(A)(1)(a) and dismissed the second count, OVI in violation of R.C. 4511.19(A)(2).  Appellant was sentenced to a term of imprisonment of six years and five months.  Additionally, appellant's driver's license was suspended for 50 years.

{¶ 12}  Appellant now appeals, asserting four assignments of error.

{¶ 13}  Assignment of Error No. 1:

{¶ 14}  THE TRIAL COURT ERRED BY OVERRULING DEFENDANT'S OBJECTION TO IMPOSITION OF SENTENCE; MOTION FOR MISTRIAL.

{¶ 15}  Appellant argues that error occurred when two different trial court judges presided over his trial and when the trial judge that presided over the first day of the trial did not sentence him.  Appellant also maintains that the court failed to rule on his motion for a mistrial and his objection to his sentence on this basis.

{¶ 16}  Crim.R. 25 governs the disability of a judge during trial and after a verdict or finding of guilty.  It provides:

(A)  During trial
If for any reason the judge before whom a jury trial has commenced is unable to proceed with the trial, another judge designated by the administrative judge * * * may proceed with and finish the trial, upon certifying in the record that he has familiarized himself with the record of the trial.  If such other judge is satisfied that he cannot adequately familiarize himself with the record, he may in his discretion grant a new trial.

(B)  After verdict or finding of guilt
If for any reason the judge before whom the defendant has been tried is unable to perform the duties of the court after a verdict or finding of guilt, another judge designated by the administrative judge * * * may perform those duties.  If such other judge is satisfied that he cannot perform those duties because he did not preside at trial, he may in his discretion grant a new trial.

{¶ 17}  On August, 20, 2012, the first day of trial, Judge Buckwalter presided over the proceedings.  On the second day of trial, the administrative judge filed an entry transferring the

case to Judge Wolaver. Prior to hearing testimony, Judge Wolaver explained that the case was transferred because Judge Buckwalter had a "personal situation occur last night" and was unable to preside over the case. The parties did not object to the transfer. After the trial concluded, an August 24th entry explained the case was transferred "due to disability" of Judge Buckwalter and that Judge Wolaver "conferred with counsel and familiarized himself with all aspects of the case prior to taking over the proceedings." The entry also stated that the case would now be transferred back to Judge Buckwalter for the remaining proceedings. Yet, on October 5, 2012 the case was then transferred back to Judge Wolaver for sentencing. Appellant filed a motion for mistrial and objection to the imposition of sentence based on the transfer of the case between the two judges.

{¶ 18} Despite appellant's assertions to the contrary, the trial court did address and rule on appellant's motion for a mistrial and objection to the imposition of sentence. During the sentencing hearing, Judge Wolaver allowed the parties to argue their motions regarding the transfer of the case between the judges. Judge Wolaver denied appellant's motion regarding the transfer of the case, reasoning Judge Buckwalter had an emergency, he understood the aspects of the case, and that the case was reassigned to him pursuant to Crim.R. 25(A). Judge Wolaver also overruled appellant's motion regarding sentencing finding he was required to sentence appellant as he presided over the trial. Additionally, Judge Wolaver found appellant was not prejudiced because he was "extremely familiar with the facts of the case" and has received "an extensive presentence investigation report" that he thoroughly reviewed.

{¶ 19} There was no error in Judge Wolaver presiding over the second day of trial. Pursuant to Crim.R. 25(A), the administrative judge filed an entry transferring the case to Judge Wolaver. Prior to continuing the proceedings, Judge Wolaver noted on the record that Judge Buckwalter would be unable to preside over the conclusion of the case due to a "personal

situation." Moreover, in compliance with Crim.R. 25(A), Judge Wolaver certified that he had "familiarized himself with all aspects of the case prior to taking over the proceedings." Although the entry confirming these events was not filed until after trial, Crim.R. 25(A) does not require such an entry to be filed prior to the trial, and the entry clearly demonstrates that Judge Wolaver was familiar with the case "prior to taking over the proceedings." Additionally, appellant did not object to the transfer of the case to Judge Wolaver at trial and he has failed to argue how the transfer prejudiced him. Crim.R. 52; *State v. Shine*, 2d Dist. Montgomery No. 11092, 1988 WL 129177,*3-4 (Dec. 1, 1988).

{¶ 20} There was also no error in Judge Wolaver sentencing appellant. As discussed above, Judge Wolaver properly received the transfer pursuant to Crim.R. 25(A) and presided over the conclusion of appellant's trial. Therefore, Crim.R. 25(B) was not implicated because Judge Wolaver was the judge before whom appellant was tried. Appellant has also failed to show how he was prejudiced by the transfer.

{¶ 21} Appellant's first assignment of error is overruled.

{¶ 22} Assignment of Error No. 2:

{¶ 23} THE VERDICT SHOULD BE REVERSED BECAUSE THE TRIAL COURT ERRED WHEN IT OVERRULED APPELLANT'S MOTION TO SUPPRESS.

{¶ 24} Appellant argues that the court erred when it overruled his motion to suppress the results of the HGN test because the test was not performed in accordance with the National Highway Traffic Safety Administration (NHTSA) standards. Specifically, appellant argues the HGN test results should be suppressed because the test was conducted three and one-half hours after the collision, appellant performed the test while sitting in a hospital bed, and Simmons failed to inquire whether appellant had suffered a concussion or was given any medication.

{¶ 25} In regards to a motion to suppress, "the trial court assumes the role of trier of facts and is in the best position to resolve questions of fact and evaluate the credibility of witnesses." *State v. Hopfer,* 112 Ohio App.3d 521, 548, 679 N.E.2d 321 (2d Dist.1996), quoting *State v. Venham,* 96 Ohio App.3d 649, 653, 645 N.E.2d 831 (4th Dist.1994). The court of appeals must accept the trial court's findings of fact if they are supported by competent, credible evidence in the record. *State v. Isaac,* 2d Dist. Montgomery No. 20662, 2005-Ohio-3733, ¶ 8, citing *State v. Retherford,* 93 Ohio App.3d 586, 639 N.E.2d 498 (2d Dist.1994). Accepting those facts as true, the appellate court must then determine, as a matter of law and without deference to the trial court's legal conclusion, whether the applicable legal standard is satisfied. *Id.*

{¶ 26} The results of field sobriety tests are admissible at trial if the state presents clear and convincing evidence that the officer administered the tests in substantial compliance with the NHTSA standards. R.C. 4511.19(D)(4)(b). The State can satisfy its burden without explicit testimony from the officer that he or she substantially complied with NHTSA standards in administering the tests. *State v. Reed*, 2d Dist. Montgomery No. 23357, 2010-Ohio-299, ¶ 53. The state is also not required to actually introduce the NHTSA manual or testimony concerning the standards as long as the record demonstrates, if only by inference, that the court took judicial notice of the NHTSA standards. *Id.*

{¶ 27} Evidence showing that the pertinent rules and regulations have been followed in conducting field sobriety tests, if unchallenged, constitutes a sufficient foundation for admission of the test results. *State v. Murray*, 2d Dist. Greene No. 2002-CA-10, 2002-Ohio-4809, ¶ 11. Only when a defendant sufficiently challenges the evidence would the state then need to present more particular evidence of compliance. *Id.* For example, testimony by the officer that he or she had been trained to perform the HGN test under NHTSA standards, and that the test was performed in

the manner in which the officer had been trained, would suffice for admission of the field sobriety test results, absent a challenge to some specific way the officer failed to comply with NHTSA standards. *Reed* at ¶ 54.

{¶ 28} At the suppression hearing, Simmons testified that he received alcohol detection training by the Ohio State Highway Patrol Academy and the United States Air Force. Simmons stated that as a State Highway Patrol Officer, he receives alcohol detection training every year and that he is trained regarding the administration of the HGN test on a yearly basis. Simmons explained that the HGN test training is conducted pursuant to the NHTSA standards and described how to conduct this test and the clues that indicate intoxication. In conducting the test on appellant, Simmons first ensured that both of appellant's eyes were equally tracking a stimulus to "rule out any type of head injury or concussion." This test showed appellant had not suffered a head injury. He then explained in detail how he administered the HGN test to appellant, including a description of the six clues that indicate whether a person is impaired and how appellant displayed all six indicators of intoxication.

{¶ 29} Simmons also testified the HGN test was conducted in the hospital while appellant was seated in a bed because he had suffered an ankle injury from the accident. The test was conducted three and one-half hours after the accident because of the "extremely chaotic" nature of the accident scene. Simmons stated that his alcohol training never discussed an ideal timeframe for administering field sobriety tests and that it is typical in an OVI case involving an accident that a field sobriety test would not be conducted for some hours. While at the scene Simmons did not notice if the airbag in appellant's vehicle deployed, but stated when an airbag deploys, there is "a slight dust coating." Simmons acknowledged that he did not inquire whether appellant had been administered medication but that it would not "surprise" him to learn appellant was administered

morphine on the way to the hospital.  However, Simmons noted appellant did not seem "doped up" but instead "was fairly coherent."

{¶ 30}  The state presented clear and convincing evidence that the HGN test was conducted in substantial compliance with the NHTSA standards.  Simmons' testimony established he is trained in the administration of the HGN test pursuant to the NHTSA standards.  He explained how to perform these tests under the standards, described how the tests were conducted on appellant, and the clues appellant demonstrated which indicated he was intoxicated.  Appellant generally argues that the results of the test should be suppressed because of the delay in conducting the test and Simmons' failure to inquire about medication administered to appellant or any head injuries appellant might have suffered.  However, appellant does not specify how any of these actions failed to comply with NHTSA standards.  Additionally, Simmons testified appellant did not have a head injury, he did not appear to be "doped up" on medication, field sobriety tests are commonly performed several hours after OVI accidents, and that his alcohol training does not address the ideal timeframe for the administration of tests.  *See State v. Hido*, 2d Dist. Clark No. 10CA0046, 2011-Ohio-2560, ¶ 17; *State v. Huffman*, 2d Dist. Clark No. 2010-CA-104, 2011-Ohio-4668, ¶ 12.

{¶ 31}  As appellant failed to demonstrate that Simmons did not follow the pertinent rules and regulations in administering the HGN test, we find that the state provided sufficient foundation for the admission of the HGN test results.  Therefore, the trial court did not err in denying appellant's motion to suppress.  Appellant's second assignment of error is overruled.

{¶ 32}  Assignment of Error No. 3:

{¶ 33}  THE VERDICT AGAINST APPELLANT SHOULD BE REVERSED BECAUSE HE RECEIVED INEFFECTIVE ASSISTANCE OF COUNSEL.

{¶ 34}  Appellant argues he received ineffective assistance of counsel during the motion to

suppress hearing. We review allegations of ineffective assistance of trial counsel under the two prong analysis set forth in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), and adopted by the Ohio Supreme Court in *State v. Bradley*, 42 Ohio St.3d 136, 538 N.E.2d 373 (1989). Pursuant to these cases, there is a strong presumption that trial counsel's conduct is within the wide range of reasonable assistance. *Strickland* at 688. To reverse a conviction based on ineffective assistance of counsel, it must be demonstrated that trial counsel's conduct fell below an objective standard of reasonableness and that his errors were serious enough to create a reasonable probability that, but for the errors, the result of the trial would have been different. *Id.*

{¶ 35} As detailed above, during the suppression hearing, Simmons acknowledged he did not ask the hospital staff whether appellant had been administered any medication, but stated that he would not be surprised if appellant was given morphine on the way to the hospital. However, Simmons stated that appellant did not seem "doped up" and was "fairly coherent." Appellant maintains that his counsel's performance was deficient because he did not introduce testimony from the paramedic regarding the administration of morphine to appellant at the suppression hearing.

{¶ 36} At trial, Ransdell, a paramedic, testified that he responded to the scene and treated appellant. Ransdell explained appellant was transported to the hospital by ambulance and Ransdell administered five milligrams of morphine to appellant, the maximum amount allowable to be given to a patient. Ransdell did not know the effect morphine has on an individual but stated during the ambulance ride, appellant seemed "alert." Appellant maintains this testimony would have shown the administration of the HGN test violated the NHTSA guidelines and therefore the results of the test would have been suppressed.

{¶ 37} Appellant's counsel was not deficient for failing to call Ransdell during the suppression hearing. Appellant has failed to cite any specific NHTSA standards or testimony from

the record that would establish that the administration of morphine would vitiate the results of an HGN test or that a police officer must inquire about medication prior to the administration of an HGN test. As discussed in the second assignment of error, the state established substantial compliance with the NHTSA standards by Simmons' testimony. Additionally, Simmons acknowledged it was possible that appellant was administered morphine, but appellant did not seem "doped up" and was "fairly coherent" at the hospital. Defense counsel's failure to call Ransdell to testify during the suppression hearing may have been a matter of reasonable trial strategy, which does not constitute deficient performance. *See State v. Thomas*, 2d Dist. Clark No. 2010 CA 48, 2011-Ohio-1987, ¶ 17. Because there had been no testimony regarding the effect of morphine on the results of an HGN test, defense counsel might have been withholding Ransdell's testimony until trial to argue that the HGN test results although admissible, were not credible evidence of alcohol intoxication due to the morphine.

{¶ 38} Accordingly, appellant's trial counsel was not ineffective for failing to introduce evidence of the administration of morphine to appellant prior to the HGN test. Appellant's third assignment of error is overruled.

{¶ 39} Assignment of Error No. 4:

{¶ 40} THE JURY VERDICT SHOULD BE REVERSED BECAUSE THERE IS INSUFFICIENT EVIDENCE TO WARRANT A CONVICTION, AND THE VERDICT IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

{¶ 41} Appellant contends that his conviction, OVI in violation of R.C. 4511.19(A)(1)(a), was against the manifest weight of the evidence and that the evidence is insufficient to sustain his convictions.

{¶ 42} "A challenge to the sufficiency of the evidence differs from a challenge to the

manifest weight of the evidence." *State v. McKnight*, 107 Ohio St.3d 101, 2005-Ohio-6046, 837 N.E.2d 315, ¶ 69. "In reviewing a claim of insufficient evidence, '[t]he relevant inquiry is whether, after reviewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.'" *Id.* at ¶ 70. A claim that a jury verdict is against the manifest weight of the evidence involves a different test. The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. *State v. Davis*, 2d Dist. Montgomery No. 25558, 2014-Ohio-624, ¶ 10. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction. *Id.*, citing *State v. Black*, 181 Ohio App.3d 821, 2009-Ohio-1629, 911 N.E.2d 309, ¶ 69 (2d Dist.).

{¶ 43} Weight of the evidence, however, concerns the inclination of the greater amount of credible evidence offered at trial, to support one side of the issue, rather than the other. *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997), citing *Black's Law Dictionary* 1594 (6 Ed.1990). The credibility of the witnesses and the weight to be given to their testimony are matters for the trier of facts to resolve. *State v. DeHass*, 10 Ohio St.2d 230, 227 N.E.2d 212 (1967). Because the factfinder has the opportunity to see and hear the witnesses, the cautious exercise of discretionary power of a court of appeals to find that a judgment is against the manifest weight of the evidence requires that a substantial deference be extended to the factfinder's determinations of credibility. *Davis* at ¶ 11. The decision whether, and to what extent, to credit the testimony of particular witnesses is within the peculiar competence of the factfinder, who has seen and heard the witnesses. *Id.* This court will not substitute its judgment for that of the trier of facts on the issue of

witness credibility unless it is patently apparent that the trier of fact lost its way in arriving at its verdict. *Id.*

**{¶ 44}** Appellant was found guilty of operating a vehicle while under the influence of alcohol, in violation of R.C. 4511.19(A)(1)(a). That statute provides: "No person shall operate any vehicle * * * within this state, if, at the time of the operation * * * [t]he person is under the influence of alcohol, a drug of abuse, or a combination of them." R.C. 4511.19(A)(1)(a).

**{¶ 45}** Appellant's conviction is not against the manifest weight of the evidence.

**{¶ 46}** Appellant's medical records indicated he smelled of alcohol and that he needed a sober ride home. Simmons testified that upon entering the hospital room, he smelled alcohol on appellant and he had bloodshot and glassy eyes. In a written statement, appellant admitted to having a couple of beers prior to the accident. Appellant displayed six out of six clues for intoxication as a result of the HGN test. Further, appellant drove erratically and his speed was estimated to be 71 miles per hour before the collision. All of the foregoing constitute competent evidence that Appellant was under the influence of alcohol at the time of the traffic crash. Additionally, appellant refused to submit to the blood alcohol content test at the hospital. The finder of fact is free to consider appellant's refusal to take a chemical test for the presence of alcohol to infer guilt. *State v. Atkinson*, 2d Dist. Montgomery No. 19972, 2004-Ohio-776, ¶ 44.

**{¶ 47}** In light of the evidence presented, the jury did not clearly lose its way in concluding appellant was guilty of operating a vehicle while under the influence of alcohol. Appellant's conviction was not against the manifest weight of the evidence and therefore we necessarily conclude that there was sufficient evidence to support the guilty verdict. Accordingly, appellant's fourth assignment of error is overruled.

**{¶ 48}** Judgment affirmed.

S. POWELL, P.J., and PIPER, J., concur.


S. Powell, J., of the Twelfth Appellate District, sitting by assignment of the Chief Justice, pursuant to Section 5(A)(3), Article IV of the Ohio Constitution.

Piper, J., of the Twelfth Appellate District, sitting by assignment of the Chief Justice, pursuant to Section 5(A)(3), Article IV of the Ohio Constitution.

M. Powell, J., of the Twelfth Appellate District, sitting by assignment of the Chief Justice, pursuant to Section 5(A)(3), Article IV of the Ohio Constitution.


Copies Mailed To:

Nathaniel R. Luken
Lori R. Cicero
Hon. Stephen Wolaver