[Cite as *State v. Louis*, 2017-Ohio-8666.]

**IN THE COURT OF APPEALS OF OHIO**
**SECOND APPELLATE DISTRICT**
**MONTGOMERY COUNTY**

STATE OF OHIO                           :
                                        :
    *Plaintiff-Appellee*              :       Appellate Case No. 27268
                                        :
v.                                      :       Trial Court Case No. 14-TRC-14033
                                        :
GILBERT LOUIS                           :       (Criminal Appeal from Municipal Court)
                                        :
    *Defendant-Appellant*             :
                                        :

. . . . . . . . . . .

O P I N I O N

Rendered on the 22nd day of November, 2017.

. . . . . . . . . . .

JOSHUA T. SHAW, Atty. Reg. No. 0087456, Assistant City of Dayton Prosecutor, 335 West Third Street, Room 372, Dayton, Ohio 45402
    Attorney for Plaintiff-Appellee

TRAVIS KANE, Atty. Reg. No. 0088191, 1015 East Centerville Station Road, Centerville, Ohio 45459
    Attorney for Defendant-Appellant

. . . . . . . . . . . .

WELBAUM, J.

{¶ 1} Defendant-appellant, Gilbert Louis, appeals from his conviction in the Dayton Municipal Court after he pled no contest to three counts of driving under the influence of alcohol, one count of failing to maintain reasonable control of his vehicle, and one count of failing to use a turn signal.   In support of his appeal, Louis contends that the trial court erred by overruling his motion to suppress evidence obtained as a result of his detainment following a traffic stop and subsequent arrest.   Louis also contends that his trial counsel provided ineffective assistance by failing to file a written brief in support of the arguments raised at the suppression hearing.   In addition to these arguments and pursuant to this court's order, the parties also addressed whether the instant appeal constitutes a final appealable order due to deficiencies in the trial court's sentencing entries.   For the reasons outlined below, we conclude the instant appeal is from a final appealable order and will affirm the judgment of the trial court.   However, the matter will be remanded to the trial court for the limited purpose of issuing a nunc pro tunc entry to correct the errors in the sentencing entries.

**Facts and Course of Proceedings**

{¶ 2} On November 14, 2014, Louis was arrested and charged with driving under the influence of alcohol ("OVI") in violation of R.C. 4511.19(A)(2).   Louis was also charged with failing to maintain reasonable control of his vehicle in violation of R.C. 4511.202 and failing to use a turn signal in violation of R.C. 4511.39.   After receiving laboratory test results showing that Louis's blood alcohol level was over the legal limit, on February 12, 2015, the State also charged Louis with two additional OVI charges under

R.C. 4511.19(A)(1)(a) and R.C. 4511.19(A)(1)(b). All the charges stemmed from a routine traffic stop that was initiated due to Louis's moving violations. The traffic stop expanded into an OVI investigation after the police officer on duty made certain observations that led him to believe Louis was driving under the influence of alcohol.

{¶ 3} On April 16, 2015, after entering a not guilty plea to all the charges, Louis filed a motion to suppress the evidence obtained as a result of his detention and subsequent arrest. In the motion, Louis argued that the police officer on duty unlawfully detained him when conducting the OVI investigation because the officer did not have a reasonable, articulable suspicion that he was driving under the influence of alcohol. Louis also argued that the officer did not have probable cause to arrest him for driving under the influence of alcohol.

{¶ 4} On June 9, 2015, the trial court held a suppression hearing, during which the State presented testimony from the police officer on duty, Officer Alexander Dole. Officer Dole testified that he has been a City of Dayton police officer for two years and has taken part in several OVI stops. Dole also indicated that he received alcohol detection training and certification through the National Highway Traffic Safety Administration ("NHTSA"). During OVI investigations, Dole claimed that he looks for slurred speech, confusion, glossy or bloodshot eyes, heavy sweating, distressed clothes, and trouble walking or standing as indicators of intoxication.

{¶ 5} Regarding the incident in question, Dole testified that around 8:00 p.m. on November 14, 2014, he was on duty in a marked cruiser with his partner when he observed a white vehicle on Midway Avenue in Dayton, Ohio, fail to signal 100 feet before turning onto Whitmore Avenue. Dole testified that the driver of the vehicle used the right

turn signal and started to turn right onto Whitmore, but then suddenly changed direction and took a wide left turn instead. Dole testified that the wide left turn made him suspect the driver was intoxicated.

**{¶ 6}** After observing the signal violation and wide left turn, Dole testified that he initiated a traffic stop for the moving violations and made contact with the driver, who was later identified as Louis. Upon approaching Louis in his vehicle, Dole testified that he smelled alcohol coming from either inside the vehicle or Louis's person and that the odor was strong enough to notice almost immediately. Dole also observed an open bottle in a brown paper bag tucked between Louis's leg and the vehicle's center console. Dole testified that in his experience, individuals often put open containers in brown paper bags in an attempt to hide them, and that "nine out of ten times" the brown bag usually contains "a bottle of alcohol or a can of beer." Suppression Hearing Trans. (June 9, 2015), p. 40. Dole also noted that the bottle in question was within easy reach for Louis to access if he wanted to take a drink while driving.

**{¶ 7}** Continuing, Dole testified that he introduced himself to Louis, explained the reason for the traffic stop, and asked for Louis's driver's license and proof of insurance. After making the request, Dole claimed that Louis seemed confused about what was being asked of him. While Louis was looking for his proof of insurance, Dole testified that he asked Louis where he was coming from and Louis responded: "A friend's." *Id.* at 10. Dole then asked where Louis was going and Louis responded: "Down here." *Id.* When Dole asked what that meant, Louis responded that he was going "down the street to pick up his * * * nephews and nieces." *Id.* Dole testified that during their conversation Louis gave delayed responses and had long pauses in his speech, which Dole considered

to be signs of intoxication.

{¶ 8} After collecting Louis's driver's license and insurance information, Dole went back to the cruiser to run the information and discuss the matter with his partner, as Dole believed Louis was possibly driving under the influence of alcohol. Upon running the information, the officers discovered that Louis had two prior OVI convictions in 2012. Thereafter, Dole went back to Louis's vehicle and asked Louis if he had been drinking to which Louis answered "no." *Id.* at 11. Dole then told Louis that he believed Louis was under the influence of alcohol and asked if he would undergo field sobriety testing. Louis declined Dole's request.

{¶ 9} Upon Louis declining field sobriety testing, Dole testified that he returned to the cruiser to speak with his partner again in order to make sure the correct steps were taken. Thereafter, Dole approached Louis a third time and asked him to exit his vehicle. Dole testified that when Louis exited his vehicle, he noticed that Louis seemed unsteady, as Louis had to "sway" or "rock about" to get out of the vehicle. Suppression Hearing Trans. (June 9, 2015), p. 11, 22. Although Dole testified that Louis had no trouble standing or walking, he further observed that Louis had bloodshot eyes and that the smell of alcohol was coming directly from Louis's breath. Dole also observed that Louis's clothes appeared mussed and smelled unclean.

{¶ 10} Because it was cold and Louis refused to undergo field sobriety testing, Dole testified that he had Louis sit in the cruiser while he read Louis his *Miranda* rights and advised him of his arrest for driving under the influence of alcohol. According to Dole, Louis indicated that he was willing to answer questions without a lawyer present and signed a waiver form to that effect. Thereafter, Dole testified that he advised Louis

of the consequences of refusing a chemical test by reading the warnings on the Administrative License Suspension ("ALS") form, which Louis signed. Since Louis refused to submit to chemical testing and had two prior OVI convictions, Dole also advised Louis that his vehicle would have to be towed and that a warrant for a blood draw would have to be obtained. The laboratory results from the blood draw confirmed that Louis's blood alcohol content was over the legal limit.

{¶ 11} On cross-examination, Louis's counsel played a video taken from Dole's cruiser camera on the night of the arrest. The video confirmed the majority of Dole's testimony, however, the video did not show a delay or long pause when Dole requested Louis's driver's license. Following the driver's license request, Louis says "yeah" without delay. However, when Dole asked if Louis had proof of insurance, Louis merely said "ah" and gave no other verbal response to the question. The video also established that Louis's speech was, at certain times, fairly slow and overly deliberate.

{¶ 12} Following the suppression hearing, the trial court ordered the parties to submit written briefs in support of the arguments raised at the hearing. The State filed its brief on August 31, 2015. Louis's counsel never filed a brief on Louis's behalf. On February 24, 2016, the trial court issued a written decision overruling Louis's motion to suppress.

{¶ 13} Approximately six months later, on August 11, 2016, Louis's counsel filed a motion to reconsider the trial court's suppression ruling. In the motion, counsel explained that a written brief was not timely filed on Louis's behalf after the suppression hearing because counsel had been incarcerated in the Greene County Jail. Accordingly, Louis's counsel set forth various arguments in support of the motion to suppress for the trial

court's reconsideration.

{¶ 14} On August 15, 2016, the trial court stated on the record that Louis's motion for reconsideration was denied. That same day, Louis appeared before the trial court and pled no contest to all the charges against him. Following his no contest plea, the trial court found Louis guilty as charged and proceeded to sentencing.

{¶ 15} During sentencing, the State and the trial court had a short discussion about Louis's OVI offenses being allied offenses of similar import, wherein the State requested the trial court to sentence Louis under the OVI offense in violation of R.C. 4511.19(A)(2). Following this discussion, the trial court sentenced Louis for the R.C. 4511.19(A)(2) offense, noting that the other two OVI offenses were being "sentenced under" that offense. Accordingly, for the OVI offenses, the trial court imposed a single sentence of 180 days in jail with 120 days suspended, two years of drug and alcohol counseling, a two-year driver's license suspension, and an $850 fine plus court costs. The trial court suspended the fines and court costs for Louis's two traffic violations.

{¶ 16} In journalizing Louis's sentence, the trial court issued a boilerplate sentencing entry form for each of Louis's offenses. The entries for the two OVI offenses under R.C. 4511.19(A)(1)(a) and (A)(1)(b) simply indicate that those offenses were "sentenced under 4511.19(A)(2) charge." None of the sentencing entries indicate that the OVI offenses were merged as allied offenses of similar import.

{¶ 17} After sentencing, Louis filed a notice of appeal from his conviction and sentence. Thereafter, this court issued an order for the parties to address in their merit briefs whether the judgment appealed from is a final appealable order. We asked the parties to address this issue because it appeared that the sentencing entries may not be

final and appealable since the entries did not provide a discrete sentence for each OVI offense, as their merger was not apparent from the entries. Rather, the sentencing entries indicate that Louis was convicted of three OVI offenses and sentenced for only one. *See State v. Saxon*, 109 Ohio St.3d 176, 2006-Ohio-1245, 846 N.E.2d 824, ¶ 9 ("a judge sentencing a defendant pursuant to Ohio law must consider each offense individually and impose a separate sentence for each offense"); *State v. Allman*, 2d Dist. Montgomery No. 24693, 2012-Ohio-413, ¶ 7 ("if a defendant is convicted of multiple charges in a single case, the court's order must contain a sentence for each charge before the judgment on any charge is final").

{¶ 18} Per this court's order, and in addition to raising three assignments of error, Louis addressed the final appealable order issue in his merit brief, as did the State. Since this court would not have jurisdiction to review the instant appeal if there is no final appealable order, we will address the final appealable order issue before reviewing Louis's three assignments of error.

### Final Appealable Order

{¶ 19} Both parties agree that a final appealable order is before this court. Specifically, the parties claim that the trial court properly imposed a single sentence for Louis's three OVI offenses because the trial court merged the OVI offenses into one conviction on allied offense grounds.

{¶ 20} R.C. 2941.25 governs the merger of allied offenses and provides as follows:

(A)  Where the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment

or information may contain counts for all such offenses, but the defendant may be convicted of only one.

(B)     Where the defendant's conduct constitutes two or more offenses of dissimilar import, or where his conduct results in two or more offenses of the same or similar kind committed separately or with a separate animus as to each, the indictment or information may contain counts for all such offenses, and the defendant may be convicted of all of them.

{¶ 21} "[W]hen determining whether offenses are allied offenses of similar import within the meaning of R.C. 2941.25, courts must ask three questions when the defendant's conduct supports multiple offenses: (1) Were the offenses dissimilar in import or significance? (2) Were they committed separately? and (3) Were they committed with separate animus or motivation? An affirmative answer to any of the above will permit separate convictions. The conduct, the animus, and the import must all be considered." *State v. Ruff*, 143 Ohio St.3d 114, 2015-Ohio-995, 34 N.E.3d 892, ¶ 31.

{¶ 22} Although the trial court's sentencing entries are unclear, a review of the sentencing hearing transcript reveals that the trial court merged Louis's OVI offenses. The transcript establishes that the State advised the trial court at the sentencing hearing that the OVI offenses were allied offenses of similar import and requested the trial court to sentence Louis for the OVI offense in violation of R.C. 4511.19(A)(2). Plea and Sentencing Trans. (Aug. 15, 2015), p. 15-17. Thereafter, the trial court indicated that it was sentencing Louis under R.C. 4511.19(A)(2) for all three OVI offenses. *Id.* at p. 18. When considering the statements at the sentencing hearing in conjunction with the

notation on the sentencing entries that the OVI offenses were "sentenced under 4511.19(A)(2) charge[,]" it can be discerned from the record that the trial court merged the three OVI offenses as allied offenses of similar import.

{¶ 23} We also find that the merger of the OVI offenses was proper. The OVI offenses were not dissimilar in import and significance, as there was not a separate, identifiable harm or separate victims arising from each offense. *See Ruff* at ¶ 23. In addition, the OVI offenses were not committed separately, as they arose from Louis's singular act of driving while under the influence of alcohol on November 14, 2014. The offenses were also not committed with a separate animus, i.e., purpose or immediate motive. *State v. Grissom*, 2d Dist. Montgomery No. 25750, 2014-Ohio-857, ¶ 40. Accordingly, Louis's OVI offenses met all the allied offense criteria in R.C. 2941.25.

{¶ 24} Because the three OVI offenses were properly merged as allied offenses, a separate sentence was not required for each offense, as they merged into one conviction under the R.C. 4511.19(A)(2) charge. *See* R.C. 2941.25(A). Therefore, the single sentence imposed for Louis's three OVI offenses constitutes a final appealable order. Accordingly, we have jurisdiction to review the three assignments of error raised by Louis in the instant appeal.

{¶ 25} Nevertheless, in so far as the boilerplate sentencing entries are unclear with respect to the merger, we find that the matter should be remanded to the trial court for the issuance of a nunc pro tunc entry to reflect what actually occurred at the sentencing hearing. *State v. Hogle*, 2d Dist. Greene No. 2016-CA-30, 2017-Ohio-4096, ¶ 9 ("A nunc pro tunc entry may be used to correct a judgment by making it reflect what actually happened"), citing *State v. Lester*, 130 Ohio St.3d 303, 2011-Ohio-5204, 958 N.E.2d 142,

¶ 20. As it stands, the language in the boilerplate sentencing entries indicate that Louis was convicted of three separate OVI offenses and sentenced for only one of those offenses. As previously noted, allied offenses merge into a single conviction. *State v. Underwood*, 2d Dist. Montgomery No. 22454, 2008-Ohio-4748, ¶ 23 ("R.C. 2941.25 requires a merger of multiple guilty verdicts into a single judgment of conviction, not a merger of sentences upon multiple judgments of conviction."). Therefore, the nunc pro tunc entry should indicate that the trial court merged the three OVI offenses into one conviction under the R.C. 4511.19(A)(2) charge and provide the sentence for that charge.

### First and Second Assignments of Error

{¶ 26} For purposes of clarity, we will address Louis's First and Second Assignments of Error together, as they both challenge aspects of the trial court's decision overruling Louis's motion to suppress. The assignments of error are as follows:

    I.    THE TRIAL COURT ERRED BY RULING THE OFFICER HAD REASONABLE ARTICULABLE SUSPICION OF CRIMINAL ACTIVITY TO DETAIN APPELLANT FOR FIELD SOBRIETY TESTING.

    II.    THE TRIAL COURT ERRED BY RULING THE OFFICER HAD PROBABLE CAUSE TO ARREST THE APPELLANT FOR OVI.

{¶ 27} Under the aforementioned assignments of error, Louis contends that in overruling his motion to suppress, the trial court erroneously concluded that Officer Dole had: (1) reasonable, articulable suspicion that Louis was intoxicated to justify prolonging the traffic stop for further investigation and field sobriety testing; and, (2) probable cause

to arrest Louis for operating a motor vehicle while under the influence of alcohol. Accordingly, Louis maintains that his detainment and subsequent arrest were unlawful and that all evidence obtained therefrom should have been suppressed. We disagree.

### Standard of Review

{¶ 28} "In ruling on a motion to suppress, the trial court 'assumes the role of the trier of fact, and, as such, is in the best position to resolve questions of fact and evaluate the credibility of the witnesses.' " *State v. Prater*, 2012-Ohio-5105, 984 N.E.2d 36, ¶ 7 (2d Dist.), quoting *State v. Retherford*, 93 Ohio App.3d 586, 592, 639 N.E.2d 498 (2d Dist.1994). "As a result, when we review suppression decisions, 'we are bound to accept the trial court's findings of fact if they are supported by competent, credible evidence. Accepting those facts as true, we must independently determine as a matter of law, without deference to the trial court's conclusion, whether they meet the applicable legal standard.' " *Id.*, quoting *Retherford*.

### Reasonable, Articulable Suspicion of Intoxication

{¶ 29} Although he does not contest the lawfulness of the initial traffic stop, Louis contends that he was unlawfully detained by Officer Dole because Dole lacked the requisite reasonable, articulable suspicion that he was driving under the influence to justify prolonging the traffic stop for purposes of conducting an OVI investigation and requesting field sobriety testing.

{¶ 30} "The Fourth Amendment to the United States Constitution and Section 14, Article I of the Ohio Constitution guarantee the right to be free from unreasonable

searches and seizures." (Citation omitted.) *State v. Mays*, 119 Ohio St.3d 406, 2008-Ohio-4539, 894 N.E.2d 1204, ¶ 7. "Stopping an automobile is reasonable if an officer has probable cause to believe that a traffic violation has occurred." *State v. Brown*, 2d Dist. Greene No. 2011 CA 52, 2012-Ohio-3099, ¶ 13, citing *Whren v. United States*, 517 U.S. 806, 810, 116 S.Ct. 1769, 135 L.Ed.2d 89 (1996). However, "[a]n officer cannot continue to detain a suspect past the time necessary for investigating and completing the initial traffic stop merely to conduct a 'fishing expedition' for other criminal activity." *Id.*, quoting *State v. Jones*, 2d Dist. Montgomery No. 23920, 2010-Ohio-5522, ¶ 16. To justify further detention for the administration of field sobriety tests, "the officer must have a reasonable, articulable suspicion that a person is driving under the influence[.]" *Id.*, citing *State v. Santiago*, 195 Ohio App.3d 649, 2011-Ohio-5292, 961 N.E.2d 264, ¶ 11 (2d Dist.).

{¶ 31} In determining whether there was a reasonable, articulable suspicion to detain, the court must evaluate the totality of the circumstances. (Citation omitted.) *State v. Gladman*, 2d Dist. Clark No. 2013 CA 99, 2014-Ohio-2554, ¶ 14. These circumstances must be considered " 'through the eyes of the reasonable and prudent police officer on the scene who must react to events as they unfold.' " *Id.*, quoting *State v. Heard*, 2d Dist. Montgomery No. 19323, 2003-Ohio-1047, ¶ 14. If there are no articulable facts that give rise to a suspicion of illegal activity, then the continued detention constitutes an illegal seizure. *State v. Robinson*, 2d Dist. Greene No. 2001 CA 118, 2002 WL 1332589, *2 (June 14, 2002), citing *State v. Robinette*, 80 Ohio St.3d 234, 240, 685 N.E.2d 762 (1997).

{¶ 32} "Many observations can satisfy this reasonable, articulable suspicion,

including the odor of an alcoholic beverage emanating from the vehicle, glassy bloodshot eyes, * * * and slow or slurred speech." (Citation omitted.) *Brown* at ¶ 13. *See also Gladman* at ¶ 17-18 (moderate odor of alcohol about motorist's person; glassy, bloodshot eyes; slurred speech; unresponsiveness to request for registration and proof of insurance and admission of consuming three beers in the last hour provided reasonable, articulable suspicion of driving under the influence); *State v. Andrews*, 2017-Ohio-1383, ___ N.E.3d ___, ¶ 58 (2d Dist.) (multiple moving violations; strong odor of alcohol; red, glassy eyes; fumbling with papers and inconsistent statements about whereabouts provided reasonable, articulable suspicion of driving under the influence); *Robinson* at *3 (strong odor of alcohol; fumbling to look for driver's license; blank, confused look on motorist's face; glossy eyes; mumbling; looking to passenger for answers to officer's questions; and admission to having a couple of beers provided reasonable, articulable suspicion of driving under the influence).

**{¶ 33}** This court has repeatedly held that a *strong* odor of alcohol alone is sufficient to provide an officer with a reasonable, articulable suspicion of driving under the influence. *State v. Tackett*, 2d Dist. Greene No. 2011-CA-15, 2011-Ohio-6711, ¶ 13, citing *State v. Marshall*, 2d Dist. Clark No. 2001 CA 35, 2001 WL 1658096, *2 (Dec. 28, 2001). *Accord Robinson* at *2; *State v. Terry*, 2d Dist. Montgomery No. 16066, 1997 WL 309410, *2 (June 6, 1997); *State v. Schott*, 2d Dist. Darke No. 1415, 1997 WL 254141, *5 (May 16, 1997) ("a strong odor of alcohol was sufficient to provide the police officer with reasonable suspicion that [defendant] was driving with a blood alcohol level that exceeded the legal limit").

**{¶ 34}** On the other hand, this court has also held that "a slight odor of an alcoholic

beverage" coupled with three or four "de minimus" marked lane violations and an admission of having consumed "a couple of beers" was insufficient to create a reasonable suspicion of driving under the influence and did not justify the administration of field sobriety tests. *State v. Spillers*, 2d Dist. Darke No. 1504, 2000 WL 299550, *3 (Mar. 24, 2000). *See also State v. Morgan*, 2d Dist. Clark No. 07-CA-67, 2007-Ohio-6691, ¶ 9 (one de minimus marked-lane violation, the odor of alcohol of unspecified intensity, and an admission of consuming alcohol earlier in the day did not provide reasonable, articulable suspicion of driving under the influence).

{¶ 35} Additionally, this court has held that there was no reasonable, articulable suspicion of driving under the influence where an officer stopped a motorist for a window tint violation and noticed the motorist had glassy, bloodshot eyes, detected the odor of alcohol, and the motorist admitted to consuming "one or two beers." *State v. Dixon*, 2d Dist. Greene No. 2000-CA-30, 2000 WL 1760664 (Dec. 1, 2000). In so holding, this court considered the fact that the traffic violation did not involve erratic driving and that the motorist's glassy, bloodshot eyes were "readily explained by the lateness of the hour, 2:20 a.m." *Id.* at *2. We further explained that "the mere detection of an odor of alcohol, unaccompanied by any basis, drawn from the officer's experience or expertise, for correlating that odor with a level of intoxication that would likely impair the subject's driving ability, is not enough to establish that the subject was driving under the influence." *Id.*

{¶ 36} In this case, Officer Dole testified that he had received alcohol detection training through NHTSA and that he has conducted several OVI stops during his two years as a Dayton police officer. Dole also testified that Louis's moving violations made him believe that Louis may have been under the influence, as Louis failed to signal 100

feet before turning and used his right turn signal when he ultimately took a wide left turn at the intersection in question. Although the turn signal is not visible on the video evidence, the video nevertheless confirms Dole's testimony regarding Louis's wide left turn, which was slowly made in the middle of the intersection.

{¶ 37} Dole also testified that when he initially approached Louis in his vehicle, he detected the smell of alcohol that "was strong enough to notice almost immediately." Suppression Hearing Trans. (June 9, 2015), p. 7. In addition, Dole testified that he observed an open bottle in a brown paper bag that was between Louis's leg and the vehicle's center console. Dole testified that in his experience, individuals often put open containers in brown paper bags in an attempt to hide them, and that "nine out of ten times" the brown bag contains "a bottle of alcohol or a can of beer." *Id*. at 40. Dole also noted that the bottle in question was within easy reach for Louis to access if he wanted to take a drink while driving.

{¶ 38} Furthermore, Dole testified that when he spoke with Louis and asked him for his driver's license and proof of insurance, Louis seemed to be confused about what was being asked of him. Dole also claimed Louis gave delayed responses and had long pauses in his speech. The video evidence did not show a delay or long pause when Dole requested Louis's driver's license, but when Dole asked if Louis had proof of insurance, Louis said "ah" and gave no other verbal response. The video further establishes that Louis's speech was slightly slow during parts of the conversation, which lends credibility to Dole's claim that Louis seemed confused.

{¶ 39} Based on these observations, Dole decided to expand the scope of the traffic stop to conduct an OVI investigation. In overruling Louis's motion to suppress, the

trial court implicitly found Dole's testimony regarding his observations credible. When considering the totality of the circumstances as testified by Dole and shown through the corroboratory video evidence, we find that a reasonable, articulable suspicion of driving under the influence existed to justify prolonging the traffic stop for an OVI investigation and to request field sobriety testing. Specifically, Louis's slow, erratic turn, the odor of alcohol that was strong enough for Dole to smell immediately upon approaching Louis's vehicle, the open bottle within Louis's reach, and Louis's confused demeanor were sufficient to provide Dole with a reasonable suspicion of intoxication.

{¶ 40} Louis's First Assignment of error is overruled.

### *Probable Cause to Arrest*

{¶ 41} Next, Louis contends that his arrest for driving under the influence of alcohol was an unlawful seizure because Officer Dole lacked probable cause to make the arrest.

{¶ 42} "Probable cause to arrest exists when a reasonably prudent person would believe that the person to be arrested has committed a crime." *State v. Adams*, 2d Dist. Montgomery No. 24184, 2011-Ohio-4008, ¶ 7, citing *State v. Timson*, 38 Ohio St.2d 122, 311 N.E.2d 16 (1974). In determining whether probable cause exists, the court considers the totality of circumstances surrounding the arrest. *State v. Thomas*, 2d Dist. Montgomery No. 21430, 2006-Ohio-6612, ¶ 9; *State v. Turner*, 2016-Ohio-7983, 74 N.E.3d 858, ¶ 19 (2d Dist.). "Probable cause to arrest does not have to be based, in whole or in part, upon a suspect's poor performance on one or more field sobriety tests." *Columbus v. Bickis*, 10th Dist. Franklin No. 09AP-898, 2010-Ohio-3208, ¶ 21. "Rather, '[t]he totality of the facts and circumstances can support a finding of probable cause to

arrest even where no field sobriety tests were administered[.]' " *Id.*, quoting *State v. Homan*, 89 Ohio St.3d 421, 427, 732 N.E.2d 952 (2000), *superseded by statute on other grounds* as recognized in *State v. Boczar*, 113 Ohio St.3d 148, 2007-Ohio-1251, 863 N.E.2d 155.

{¶ 43} Recently, in *State v. Barger*, 2017-Ohio-4008, ___ N.E.3d ____ (2d Dist.), this court held that there was probable cause to arrest a motorist for driving under the influence where the motorist turned left in front of a motorcyclist; smelled of alcohol; had glassy, bloodshot, and dilated eyes; was quiet and looked down and away when speaking to the arresting officer; and responded to the officer's question as to whether he had been drinking alcoholic beverages in an abnormal, stiff manner. *Id.* at ¶ 17. We note that the arresting officer in *Barger* also testified that the odor of alcohol coming from the motorist intensified as the motorist stood up to speak with him. *Id.*

{¶ 44} In contrast, this court held in *Morgan*, 2d Dist. Clark No. 07-CA-67, 2007-Ohio-6691, that no probable cause existed to arrest a motorist for driving under the influence where the motorist committed a de minimus marked lane violation, drove beyond the scope of his driving privileges, smelled of alcohol, and admitted to drinking alcohol earlier in the day. *Id.* at ¶ 9, 16-20.

{¶ 45} Here, Officer Dole testified that in addition to his initial observations (Louis's erratic left turn, the odor of alcohol that was strong enough for Dole to smell immediately upon approaching Louis's vehicle, the open bottle within Louis's reach, and Louis's confused demeanor), Dole began to notice other signs of intoxication after Louis declined field sobriety testing. Specifically, Dole testified that Louis was unsteady and swayed as he exited his vehicle. This testimony is confirmed by the video evidence, as the

recording shows that Louis did not immediately exit the vehicle, but waited approximately 10 seconds and swayed his body to the right before exiting. Dole also testified that when Louis exited the vehicle he could smell the odor of alcohol coming directly from Louis's breath. Dole also noticed that Louis's eyes were bloodshot and that his clothes were mussed and smelled unclean.

{¶ 46} As previously noted, in overruling Louis's motion to suppress, the trial court implicitly found Officer Dole's testimony credible. Based on Dole's testimony and the corroboratory video evidence, we conclude that the trial court did not err in finding that probable cause existed for Dole to arrest Louis for driving under the influence, as the totality of the circumstances support such a finding.

{¶ 47} Louis's Second Assignment of Error is also overruled.

**Third Assignment of Error**

{¶ 48} Louis's Third Assignment of Error is as follows:

APPELLANT WAS DENIED HIS RIGHT TO EFFECTIVE ASSISTANCE OF COUNSEL GUARANTEED UNDER THE SIXTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION.

{¶ 49} Under his Third Assignment of Error, Louis contends that his trial counsel provided ineffective assistance by failing to submit a written brief in support of the arguments presented at the suppression hearing as ordered by the trial court. Louis claims that a convincing brief submitted by his counsel could have persuaded the trial court to grant his motion to suppress as opposed to denying it. We again disagree.

{¶ 50} In order to succeed on an ineffective assistance claim, Louis must establish:

(1) his trial counsel's performance was deficient; and (2) the deficient performance prejudiced him. *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), paragraph two of the syllabus; *State v. Bradley*, 42 Ohio St.3d 136, 538 N.E.2d 373 (1989), paragraph two of the syllabus. The failure to make a showing of either deficient performance or prejudice defeats a claim of ineffective assistance of counsel. *Strickland* at 697.

{¶ 51} To establish deficient performance, Louis must show that his trial counsel's performance fell below an objective standard of reasonable representation. *Strickland* at 688; *Bradley* at 142. To establish prejudice, Louis must show that there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different. *State v. Hale*, 119 Ohio St.3d 118, 2008-Ohio-3426, 892 N.E.2d 864, ¶ 204, citing *Strickland* at 687-688, 694; *Bradley* at paragraph two of the syllabus. " 'A reasonable probability is a probability sufficient to undermine confidence in the outcome.' " *Bradley* at 142, quoting *Strickland* at 694.

{¶ 52} In this case, even if counsel's performance was deficient in failing to file a written brief in support of the arguments raised at the suppression hearing, Louis cannot demonstrate that the outcome of the proceedings would have been different had such a brief been filed. More specifically, Louis cannot demonstrate that the trial court would have granted his motion to suppress, as we already determined that said motion was properly overruled.

{¶ 53} Furthermore, prior to Louis's no contest plea, trial counsel filed a 19-page motion for the trial court to reconsider its suppression ruling, which raised various arguments in support of suppressing the evidence at issue. We presume the arguments

in the motion for reconsideration are the same arguments that counsel would have raised in the post-hearing brief had one been filed with the trial court. The fact that the trial court overruled the motion for reconsideration indicates the arguments therein did not affect its suppression decision.

{¶ 54} Louis's Third Assignment of Error is overruled.

## Conclusion

{¶ 55} Having overruled all three assignments of error raised by Louis, the judgment of the trial court is affirmed. The matter, however, is remanded to the trial court for the sole purpose of issuing a nunc pro tunc entry to correct the deficiencies in the trial court's sentencing entries.

. . . . . . . . . . . . .

FROELICH, J. and TUCKER, J., concur.

Copies mailed to:

Joshua T. Shaw
Travis Kane
Hon. Daniel G. Gehres