[Cite as *State v. Hein*, 2023-Ohio-1592.]

IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Appellant | : | C.A. No. 29668 |
| | : | |
| v. | : | Trial Court Case No. 22-TRC-691 |
| | : | |
| RYAN EVENSEN HEIN | : | (Criminal Appeal from Municipal Court) |
| | : | |
| Appellee | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on May 12, 2023

. . . . . . . . . . .

BARBARA J. DOSECK, STEPHANIE L. COOK, & ALISSA SCHRINER, Attorneys for Appellee

CHARLES M. ROWLAND, II, Attorney for Appellant

. . . . . . . . . . . .

WELBAUM, P.J.

{¶ 1} Plaintiff-Appellant, State of Ohio/City of Dayton ("the City") appeals from a trial court judgment granting a motion to suppress filed by Defendant-Appellee, Ryan Evensen Hein ("Hein"). According to the City, the trial court erred in three ways: (1) by finding insufficient evidence for the investigatory stop; (2) by finding that field sobriety

tests were not administered in sufficient compliance with National Highway Traffic Safety Association ("NHTSA") standards; and (3) by finding that the University of Dayton Police Department ("UDPD") officers lacked probable cause to arrest Hein.

{¶ 2} After reviewing the record, we conclude that the trial court erred in granting Hein's motion to suppress evidence. As an initial point, the court made no factual findings to which an appellate court could defer and also erroneously held the City to a probable cause standard for the investigatory detention. The City was only required to show that the police had a reasonable, articulable suspicion of criminal activity. Furthermore, evidence elicited during the suppression hearing revealed that the police did have reasonable, articulable suspicion to detain Hein and to administer a field sobriety test. The test was also administered in substantial compliance with NHTSA standards and indicated that Hein was intoxicated. Finally, even without the sobriety test results, the police had probable cause to arrest Hein based on the totality of the circumstances. Accordingly, the judgment of the trial court will be reversed, and this case will be remanded for further proceedings.

I. Facts and Course of Proceedings

{¶ 3} On February 14, 2022, the City filed a complaint in Dayton Municipal Court charging Hein with two offenses: (1) OVI, driving under the influence of alcohol, a drug of abuse, or a combination of them in violation of R.C. 4511.19(A)(1)(a); and (2) OVI, driving while having a "concentration of seventeen-hundredths of one gram or more by weight of alcohol per two hundred ten liters of the person's breath," in violation of R.C.

4511.19(A)(1)(h).

{¶ 4} On February 16, 2022, counsel entered a notice of appearance for Hein, a not guilty plea, and a jury demand. Hein also waived the time for bringing the case to trial and requested a pretrial conference. On March 16, 2022, Hein filed a motion seeking limited driving privileges, which was granted on March 23, 2022. Following a May 9, 2022 pretrial, the court set the case for a July 21, 2022 suppression hearing. Hein also filed a motion to suppress on May 9, 2022. At the City's request, the suppression hearing was then continued until October 3, 2022.

{¶ 5} At the suppression hearing, the court heard testimony from three police officers who were City witnesses and from a defense expert, who was a retired police officer. The court took the matter under advisement and, on December 9, 2022, filed a decision concluding that the police had lacked probable cause to stop, detain, and arrest Hein. The court further found that the UDPD sobriety tests had not been administered in substantial compliance with NHTSA standards. The court therefore granted the motion to suppress.

{¶ 6} On December 9, 2022, the City filed a notice of appeal and a certification under Crim.R. 12(K). Pursuant to the City's request, we expedited the appeal. *See State v. Hein*, Order to Expedite (Dec. 20, 2022). We note that the City's reply brief was untimely filed on April 11, 2023, almost a month after Hein's brief had been served on March 15, 2023. *See* App.R. 18(A) ("appellant may serve and file a reply brief within ten days after service of the brief of appellee"). The City also did not file a request for an extension of time showing good cause as required by App.R. 16(B). As a result, we will

not consider the City's reply brief.

{¶ 7} We also had to file two show cause orders in this case. The first was issued because the time for completing the record by filing the transcript had expired; the second was based on the fact that the time for filing Hein's brief had passed. *See State v. Hein*, Show Cause Order (Jan 24, 2023) (directed to the City), and *State v. Hein,* Show Cause Order (Mar. 14, 2023) (directed to Hein). Neither side had asked for extensions of time before our show cause orders were issued, but both parties did comply by filing the respective items within the 14-day time period listed in the orders. As a result, the show cause orders are deemed satisfied.

## II. Sufficiency of Evidence to Support the Stop

{¶ 8} The City's first assignment of error states that:

The Trial Court Erred in Finding That There Was Insufficient Evidence to Stop and Detain Hein.

{¶ 9} Under this assignment of error, the City contends that the trial court erred in applying a probable cause standard to the stop, as opposed to a reasonable suspicion standard. In addition, the City argues that UDPD had sufficient justification to detain Hein.

{¶ 10} Before we address the City's arguments, we will outline general principles relating to suppression and police stops. This case is a bit unusual because UDPD did not stop Hein for a traffic violation and then administer sobriety tests; instead, he was detained, given a sobriety test, and ultimately arrested after an-off duty police officer who

was working as a Door-Dash delivery person waved down the police and complained about Hein's erratic driving.  Notably, just moments earlier, the police had witnessed Hein driving in violation of the law and were looking for his car.

### A.  Review of Suppression Decisions

{¶ 11} "Appellate review of a motion to suppress presents a mixed question of law and fact.   When considering a motion to suppress, the trial court assumes the role of trier of fact and is therefore in the best position to resolve factual questions and evaluate the credibility of witnesses."   (Citation omitted.)   *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, 797 N.E.2d 71, ¶ 8.   "Consequently, an appellate court must accept the trial court's findings of fact if they are supported by competent, credible evidence. * * * Accepting these facts as true, the appellate court must then independently determine, without deference to the conclusion of the trial court, whether the facts satisfy the applicable legal standard."   (Citations omitted.)   *Id.*

{¶ 12} The trial court here did not make any factual findings.   Consequently, there are no facts that we are required to accept.   In its December 9, 2022 decision, the court stated simply that UDPD "lacked probable cause to stop, detain, and arrest the Defendant."   Decision and Entry (Dec. 9, 2022) ("Decision"), p. 1.

{¶ 13} The court did not mention "reasonable suspicion" or distinguish between reasonable suspicion and probable cause.   We note that during closing argument at the suppression hearing, the City did specifically distinguish between reasonable suspicion for a stop or detention and probable cause for an arrest.   Transcript of Proceedings

("Tr."), p. 116. However, that does not mean the trial court's decision was based on such distinctions, particularly since the court mentioned only "probable cause." We cannot assume what the court thought, absent an explanation.

## B. Search and Seizure Guarantees

{¶ 14} "The Fourth Amendment to the United States Constitution and Section 14, Article I of the Ohio Constitution guarantee 'the right of people to be secure in their persons, houses, papers, and effects, against *unreasonable searches and seizures.*' " (Emphasis sic.) *State v. Taylor*, 106 Ohio App.3d 741, 747, 667 N.E.2d 60 (2d Dist.1995). "The United States Supreme Court has created three categories of police-citizen contact to identify the situations where these guarantees are implicated." *Id.*, citing *Florida v. Royer*, 460 U.S. 491, 501-507, 103 S.Ct. 1319, 75 L.Ed.2d 229 (1982). These categories are: consensual encounters; *Terry* stops or investigative detentions; and seizures equivalent to arrests. *Id.* at 747-749. The case before us involves only the latter two types of police-citizen contact.

## 1. *Terry* Stops

{¶ 15} "Under *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), a police officer who lacks probable cause to arrest may, consistent with the Fourth Amendment, make an investigatory stop, including a traffic stop, of a person if the officer has reasonable suspicion to believe that the person is or is about to be engaged in criminal activity." *State v. Tidwell*, 165 Ohio St.3d 57, 2021-Ohio-2072, 175 N.E.3d 527,

¶ 19, citing *Navarette v. California*, 572 U.S. 393, 396, 134 S.Ct. 1683, 188 L.Ed.2d 680 (2014).

**{¶ 16}** "Reasonable suspicion for a *Terry* stop 'is dependent upon both the content of information possessed by police and its degree of reliability.' " *Id.* at ¶ 20, quoting *Alabama v. White*, 496 U.S. 325, 330, 110 S.Ct. 2412, 110 L.Ed.2d 301 (1990). " 'Both factors – quantity and quality – are considered in the "totality of the circumstances – the whole picture," * * * that must be taken into account when evaluating whether there is reasonable suspicion.' " *Id.*, quoting *White* at 330, quoting *United States v. Cortez,* 449 U.S. 411, 417, 101 S.Ct. 690, 66 L.Ed.2d 621 (1981). "The 'reasonable and articulable suspicion' analysis is based on the *collection* of factors, not on the individual factors themselves." (Emphasis sic.) *State v. Batchili*, 113 Ohio St.3d 403, 2007-Ohio-2204, 865 N.E.2d 1282, ¶ 19, citing *United States v. Arvizu*, 534 U.S. 266, 274, 122 S.Ct. 744, 151 L.Ed.2d 740 (2002).

**{¶ 17}** "Police officers may 'draw on their own experience and specialized training to make inferences from and deductions about the cumulative information available to them that "might well elude an untrained person." ' " *Tidwell* at ¶ 20, quoting *Arvizu* at 273. (Other citation omitted.)

2.   Probable Cause for an Arrest

**{¶ 18}** The Supreme Court of Ohio has stressed that "[p]robable cause is a stricter standard than reasonable and articulable suspicion." *State v. Mays*, 119 Ohio St.3d 406, 2008-Ohio-4539, 894 N.E.2d 1204, ¶ 23, citing *State v. Evans*, 67 Ohio St.3d 405, 411,

618 N.E.2d 162 (1993). "A warrantless arrest that is based upon probable cause and occurs in a public place does not violate the Fourth Amendment." *State v. Brown*, 115 Ohio St.3d 55, 2007-Ohio-4837, 873 N.E.2d 858, ¶ 66, citing *United States v. Watson*, 423 U.S. 411, 96 S.Ct. 820, 46 L.Ed.2d 598 (1976). "Probable cause to arrest exists when a reasonably prudent person would believe that the person to be arrested has committed a crime." *State v. Adams*, 2d Dist. Montgomery No. 24184, 2011-Ohio-4008, ¶ 7, citing *State v. Timson*, 38 Ohio St.2d 122, 311 N.E.2d 16 (1974). "Ohio decisions have interpreted this definition to include the 'totality' of facts and circumstances surrounding the arrest." (Citations omitted.) *State v. Brandenburg*, 41 Ohio App.3d 109, 111, 534 N.E.2d 906 (2d Dist.1987). "Probable cause may exist even in the absence of any evidence of impaired motor coordination." *Id.*, citing *State v. Finch*, 24 Ohio App.3d 38, 492 N.E.2d 1254 (12th Dist.1985).

{¶ 19} Having outlined the general standards that apply, we will first consider whether the trial court erred in finding insufficient evidence to justify the stop.

## C. Discussion

{¶ 20} Clearly, the standards for reasonable suspicion and probable cause differ, and the trial court erred in failing to distinguish between these concepts. The court therefore incorrectly held the City to a higher standard for stopping Hein and conducting the field sobriety tests. However, this error might not be prejudicial if the evidence fails to establish that the police had reasonable suspicion to detain Hein and to conduct sobriety tests.

{¶ 21} The facts elicited during the suppression hearing were as follows. On February 11, 2022, Sgt. David McIntosh was employed by the UDPD. McInstosh had been employed by the University of Dayton (UD) for 16 years and had been in law enforcement for a total of 22 years. Tr. at p. 7-8. At around 1:00 a.m., while driving a marked cruiser northbound on Brown Street in Dayton, Ohio, McIntosh observed a car cross the crosswalk at Caldwell Avenue, where there was a posted traffic light. McIntosh had the right-of-way and had to brake to avoid being struck. McIntosh noticed that a male was operating the other car (later identified as Hein's car) and that a Hawaiian lei was hanging from the rearview mirror. *Id.* at p. 9.

{¶ 22} McInstosh did not activate his emergency lights. *Id.* at p. 37-38. At that point, McInstosh went down to Jasper Street, which was just through the intersection, to try to turn around. McIntosh thought he saw Hein's car drive down K-Street (which is owned by UD and splits UD's parking lots) and continue onto Rubicon Avenue. That was when McIntosh lost track of the car until he came down Jasper. *Id.* At this time (which was between 30 seconds and a couple of minutes later), McIntosh and his partner, Sgt. Tiffany Oldham, were waved down by a man who identified himself as an off-duty police officer. The officer, Aaron Smith, Sr., told the police that a driver had been driving in an erratic manner close to the rear of Smith's car, and had been zigzagging, flashing the vehicle's lights, and blowing the horn. *Id.* at p. 9, 10-11, 22, and 35, and State's Ex. 2 (Smith's witness statement). According to body camera video of the conversation with Smith (one of six videos we reviewed), Smith also told the police that when he initially encountered Hein, Hein had stumbled, and Smith said to Hein, "Oh, you're drunk."

AXON_ Body_2_Video_2022-2-11_0108-2 ("Video 108-2"), 6:10:46-10:50. Smith's statement was made before the police administered sobriety tests. Hein had exited his car and had walked toward Smith before the police arrived. *Id.* at State's Ex. 2.

**{¶ 23}** When Smith pointed to the vehicle that had been flashing its lights, Sgt. McIntosh noticed the lei and realized that it (Hein's car) was the one that had almost hit his cruiser. Tr. at p. 11-12 and 13-14.

**{¶ 24}** Sgt. Oldham interacted with Hein at the scene before sobriety tests were administered. She described Hein as having a strong odor of alcohol, which is why she asked him how much he had to drink. Hein also had glassy eyes and, according to Oldham's report, slurred speech. *Id.* at p. 23 and 34. Hein responded that he had consumed two glasses of wine. *Id.* at p. 26. In a supplemental report dated February 11, 2022, at 06:23, Oldham reported that she had detected a "strong odor" of alcohol. State's Ex. 1 (Hein, Ryan 22TRC691), Supplemental Case Report, p. 1 (Oldham). UDPD Officer Klei subsequently administered field sobriety tests. Tr. at p. 24.

**{¶ 25}** At the time of this incident, Officer Klei had been a police officer for UDPD since November 2021. *Id.* at p. 39-40. Klei was a field training officer, which meant she was under the supervision of another officer. *Id.* at p. 42-43. Klei's prior law enforcement experience was as a public safety officer for Metro Parks for three months. During 2021, Klei also had six months of training at a police academy, including a week of training on detecting persons who were under the influence of alcohol. *Id.* at p. 40-41. The training included field sobriety test administration according to the 2018 NHTSA manual. *Id.* at p. 41.

{¶ 26} During her testimony at the suppression hearing, Klei described her administration of sobriety tests to Hein, including the "one leg stand, walk and turn, and H.G.N." *Id.* at p. 46. The City also played the video of that encounter, which is contained in Video 108-2. *Id.* at p. 47, 49, 51, and 54. Klei observed one clue during the one leg stand, three of eight clues on the walk and turn test, and six of six clues on the HGN (lack of smooth pursuit in both eyes, maximum deviation in both eyes, and onset of nystagmus in both eyes). *Id.* at p. 47-48, 50, 55-56, 65, and 67-68, and State's Ex. 2. The latter two test results indicated a blood alcohol content of above point one percent, i.e., the legal limit. Tr. at p. 48, 51, 56. After speaking with her supervisor, Klei arrested Hein for OVI. *Id.* at p. 56. Klei also stated that she had observed Hein having slurred speech and that he had not listened to her instructions when she was conducting the tests. *Id.* at p. 60.

{¶ 27} Before performing the sobriety test, Klei had also talked to Smith about what he had observed. *Id.* at p. 76. Again, the body cam video (Video 108-2) contains Smith's statements about Hein, including that Hein was stumbling and was drunk. Klei further recalled getting Smith's written statement before conducting the field test. Tr. at p, 76. During cross-examination, Klei admitted that she did not perform the tests in the specific order the NHTSA manual dictated. Instead, she conducted them in reverse order. Klei stated that NHTSA "didn't really harp on doing a specific order. They just harp on how to do the test." *Id.* at p. 58-59 and 70-72.

{¶ 28} Hein's expert was Lee Edwards, a retired police officer who had made several hundred DUI arrests during his career. Edwards retired in 2001 and became an

NHTSA instructor that year. At the time of his testimony, Edwards was employed as an adjunct professor at Sinclair Community College and was the executive officer of the police academy at Sinclair. Tr. at p. 82-83. During a 22-year teaching career, Edwards had evaluated 10,000 to 15,000 tests done by cadets during their training. *Id.* at p. 84.

{¶ 29} According to Edwards, if sobriety tests are not conducted in the particular way NHTSA indicates (i.e., if any standardized field test element is changed), the validity of the test "may be compromised, which may make the test invalid." *Id.* at p. 84-85, 102, and 103, and Defense Ex. A., quoting NHTSA Manual, p. VIII-19. The order of the tests is: HGN, walk and turn, and one-leg stand. Tr. at p. 88. Additionally, with respect to the HGN test, Edwards stated that if this test is not administered in the specified order (three different tests are involved), stress is placed on the eyes. *Id.* at p. 96-97.

{¶ 30} Edwards concluded that probable cause for an arrest had not existed in this case. He stated that odor is not a NHTSA standard and is not indicative of impairment because it is not objective and the pervasiveness or strength of odor is based on how sensitive a person may be. *Id.* at p. 90. Likewise, bloodshot or glassy eyes are not NHTSA standards either, because studies on which NHTSA is based indicate that these symptoms are more likely due to medical and environmental reasons than to prohibited substances. *Id.* at p. 90-92.

{¶ 31} As a further matter, after viewing the videotape, Edwards did not find Hein's speech to be slurred or indicative of what he had seen in his career when people were impaired. *Id.* at p. 93-94. Edwards also viewed all the video and never saw Hein stumble. *Id.* at p. 111-112. Edwards did say that he did not disagree about any of the

clues that Officer Klei saw. *Id.* at p. 95-96 and 105. Additionally, Edwards testified that he was not aware of any scientific basis for doing sobriety tests in a certain order. *Id.* at p. 100-101.

{¶ 32} Our review of the evidence indicates that the police did have reasonable suspicion to detain Hein for purposes of conducting a sobriety test. In the first place, the police were waved down by an off-duty police officer who had observed Hein driving erratically and had seen Hein stumble after he exited his car. The officer, in fact, told police that Hein was "drunk."

{¶ 33} *Tidwell* involved a similar situation, although the facts relating to informant reliability were stronger here. In *Tidwell*, a police officer was investigating an accident and had directed the involved drivers into the parking lot of a Speedway gas station. During the investigation, a man in the lot yelled at the officer, " 'Hey, you need to stop that vehicle. That lady is drunk.' " *Tidwell*, 165 Ohio St.3d 57, 2021-Ohio-2072, 175 N.E.3d 527, at ¶ 2-3. The officer did not know the man's identity, but after watching the vehicle back up unusually slowly and observing a blank stare on the driver's face, the officer stopped the vehicle and questioned the driver. He then made other observations that led him to believe the driver was impaired. Another officer who arrived on the scene also made similar observations and, after conducting sobriety tests, arrested the defendant for driving while intoxicated. *Id.* at ¶ 4-13.

{¶ 34} After the trial court granted a motion to suppress, the court of appeals found that the original "officer lacked reasonable suspicion necessary to effectuate a lawful investigatory stop because the unidentified Speedway customer's anonymous tip lacked

sufficient indicia of reliability and there was no evidence of any erratic driving by [the defendant] prior to the stop." *Id.* at ¶ 15. The Supreme Court of Ohio disagreed, concluding that there had been reasonable suspicion to investigate based on the unidentified informant's tip and the officer's partial corroboration. *Id.* at ¶ 54.

{¶ 35} In discussing informants, the court stressed that the police can rely on information supplied by others, rather than just on their own observations. *Id.* at ¶ 24, citing *Navarette*, 572 U.S. at 397, 134 S.Ct. 1683, 188 L.Ed.2d 680. The court further remarked that "[i]n attempting to ascertain whether information provided by an informant's tip bore some indicia of reliability that established reasonable suspicion for an investigatory stop, many courts, including this court, have found it useful to place the informant into one of three categories: (1) anonymous informant, (2) known informant (someone from the criminal world who has provided previous reliable tips), and (3) identified citizen informant." *Id.* at ¶ 29, citing *Maumee v. Weisner*, 87 Ohio St.3d 295, 300, 720 N.E.2d 507 (1999), and *State v. Jordan*, 104 Ohio St.3d 21, 2004-Ohio-6085, 817 N.E.2d 864, ¶ 36, *overruled on other grounds*, *State v. Harper*, 160 Ohio St.3d 480, 2020-Ohio-2913, 159 N.E.3d 248.

{¶ 36} Because the informant in *Tidwell* had characteristics of both an anonymous informant (to whom less reliability is accorded) and an identified citizen informant, the court did not decide his specific status. The court therefore considered the totality of the circumstances, including the officer's own observations, in finding the stop reasonable. *Id.* at ¶ 33-52. In contrast to the informant in *Tidwell*, Aaron Smith was clearly an identified citizen informant.

{¶ 37} As noted, assessment of reasonable suspicion involves both the content of the information the police possess and its reliability. *Tidwell,* 165 Ohio St.3d 57, 2021-Ohio-2072, 175 N.E.3d 527, at ¶ 20. "[A]n identified citizen informant may be highly reliable and, therefore, a strong showing as to the other indicia of reliability may be unnecessary: '[I]f an unquestionably honest citizen comes forward with a report of criminal activity – which if fabricated would subject him to criminal liability – we have found rigorous scrutiny of the basis of his knowledge unnecessary.' " *Weisner* at 300, quoting *Illinois v. Gates*, 462 U.S. 213, 233-234, 76 L.Ed.2d 527, 103 S.Ct. 2317 (1983).

{¶ 38} Here, the informant was very reliable, because Smith was a police officer and waved down the police immediately after observing Hein's erratic driving and signs indicating Hein was impaired. As an officer, Smith would have been aware of liability that could result from making false reports. Furthermore, while not strictly necessary in this case, Officer McIntosh identified Hein's car as the one that had caused the prior traffic incident. *See* AXON_Body_2_Video_2022-2-11_0107, 6:10:37-10:58; and AXON_Body_2_Video_2022-2-11_0108, 6:10:11:13 – 11:23.

{¶ 39} Accordingly, there is no question here that reasonable, articulable suspicion existed for Hein's detention and the administration of field sobriety tests. The City's first assignment of error is sustained.

### III. Administration of Sobriety Tests

{¶ 40} The City's second assignment of error is as follows:

The Trial Court Erred in Finding That the Field Sobriety Tests Were

Not Administered in Substantial Compliance With NHTSA Standards.

{¶ 41} Under this assignment of error, the City contends that the trial court's conclusion about administration of the field sobriety test was not supported by the evidence. The City points out that the trial court made no specific factual findings and that Hein's expert disagreed with Officer Klei's interpretation of Hein's behavior rather than how the test was administered. In responding, Hein notes several deficiencies in Klei's testimony. One is that Klei used her own "clues" for the one-leg stand, which according to Hein, "alone" demonstrates that "the Court is correct in concluding the officer has substituted her standards thus invalidating all of the tests * * *." Appellee's Brief, p. 8-9. Hein further contends that Klei did not know how many clues to look for on the walk-and-turn test, was unclear on whether she was trained to look for the exact onset angle, and did not perform the tests in the order that NHTSA designates. *Id.* at p. 9-10.

{¶ 42} "The applicable legal requirement for admission of field sobriety tests is whether they were conducted in substantial compliance with NHTSA standards." *State v. Tyner*, 2d Dist. Montgomery No. 25405, 2014-Ohio-2809, ¶ 7, citing R.C. 4511.19(D)(4)(b) and *State v. Davis*, 2d Dist. Clark No. 2008-CA-65, 2009-Ohio-3759, ¶ 14-15. Substantial compliance " 'is a legal standard for a court's determination.' " *Id.*, quoting *Davis* at ¶ 18. " 'We defer to the trial court's factual findings and independently determine whether they demonstrate substantial compliance' with the standards." *Id.*

{¶ 43} As with the trial court's holding on the subject of investigatory detention, there were no factual findings concerning compliance with NHTSA standards, and nothing for which appellate deference is required.

{¶ 44} "The results of field sobriety tests generally are admissible so long as the proper foundation has been laid as to both the administering officer's training and ability to administer the tests and the actual technique he or she used to administer the tests." *State v. Boles*, 2020-Ohio-4485, 158 N.E.3d 1013, ¶ 15 (2d Dist.), citing *State v. Boczar*, 113 Ohio St.3d 148, 2007-Ohio-1251, 863 N.E.2d 155, ¶ 28. "Accordingly, the State's burden of proof regarding the admissibility of field sobriety test results 'is not an onerous one'; ' "general testimony that all pertinent rules and regulations had been followed in conducting the defendant's test, if unchallenged, would amount to a sufficient foundation for the admission of the results." ' " *Id.*, quoting *State v. Murray*, 2d Dist. Greene No. 2002-CA-10, 2002-Ohio-4809, ¶ 11. (Other citation omitted.) " 'For example, testimony by the officer that he or she had been trained to perform the HGN test under NHTSA standards, and that the test was performed in the manner in which the officer had been trained, would suffice for admission of the field sobriety test results, absent a challenge to some specific way the officer failed to comply with NHTSA standards.' " *Id.*, quoting *State v. Reynolds*, 2d Dist. Greene No. 2012-CA-64, 2014-Ohio-3642, ¶ 27. (Other citation omitted.)

{¶ 45} As a preliminary point, Officer Klei stated that she had performed the tests on Hein in accordance with NHTSA standards and that she had read directions from a card to make sure that she was performing to the best of her abilities and "per NHTSA standards." Tr. at p. 45-46. Klei described the testing in detail, and video of the testing was also played during the hearing. *Id.* at p. 47-48 and Video 108-2. As indicated, we have watched all the videos.

{¶ 46} Contrary to Hein's inference, Klei was not incorrect about the number of clues on the walk-and-turn test.   During direct examination, Klei correctly stated that the number of clues were eight.   *Id.* at p. 51.   On cross-examination, Klei first stated six, which was obviously a misstatement, but after being reminded by defense counsel of the number of clues, she immediately corrected the amount to what was consistent with her prior testimony.   *Id.* at p. 65.   This was a very minor issue.   Klei did incorrectly testify that the one-leg stand had six clues, when there were four.   *Id.* at p. 60.   However, the checklist Klei filled out the night of the incident contained the correct number of boxes, and she accurately filled out the form.   *See* State's Ex. 3.   As an additional matter, we find no fault in Klei's comment that she had observed additional clues, like the fact that Hein began the one-leg stand early and did not comply with instructions.   Tr. at p. 47-48. Klei marked the test for the one-leg stand appropriately, and she was entitled to make other observations that might indicate to a reasonable person that Hein was intoxicated.

{¶ 47} We also note that the report of Hein's expert, Edwards, did not criticize Klei's administration of the test.   *See* Defense Ex. A.   And, as previously noted, the expert's major criticisms concerned signs like glassy or bloodshot eyes and alcohol odor, which, by Edward's own admission, are not part of NHTSA standards.

{¶ 48} More critical, however (and fatal to Hein's argument), are two matters: (1) Edwards admitted he was not aware of any scientific basis for performing tests in a particular order; and (2) Edwards did not challenge Klei's findings on the tests themselves.   As previously noted, Klei found three clues out of eight on the walk and stand test, and six clues out of a possible six on the HGN test.   The score on *either* test

indicated a level of intoxication exceeding the legal limit. Consequently, there was no logical basis for the trial court's conclusion that Klei had failed to sufficiently comply with NHTSA standards.

**{¶ 49}** In light of the preceding discussion, the City's second assignment of error is sustained.


IV.   Probable Cause

**{¶ 50}** The City's third assignment of error states that:

The Trial Court Erred in Finding That UDPD Lacked Probable Cause

to Detain Hein.

**{¶ 51}** Under this assignment of error, the City contends that even without the sobriety tests, probable cause existed to arrest Hein for OVI. Again, the trial court did not make factual findings, and no basis for deference exists on this point. In addition, we have already concluded that Officer Klei's testing substantially complied with NHTSA standards.

**{¶ 52}** "An individual's performance on field sobriety tests is one means of showing that he or she was under the influence of alcohol." *Boles*, 2020-Ohio-4485, 158 N.E.3d 1013, at ¶ 35, citing *State v. Donovan*, 2d Dist. Clark No. 02CA0052, 2003-Ohio-1045, ¶ 25. However, this is not the only means. " 'Probable cause to arrest does not have to be based, in whole or in part, upon a suspect's poor performance on one or more field sobriety tests.' " *State v. Louis*, 2d Dist. Montgomery No. 27268, 2017-Ohio-8666, ¶ 42, quoting *Columbus v. Bickis*, 10th Dist. Franklin No. 09AP-898, 2010-Ohio–3208, ¶ 21.

Instead, the totality of the circumstances is considered. *Id.*

{¶ 53} The totality of circumstances here included that two police officers had seen Hein nearly run a red light and stop well after the cross bar for an intersection; the officers had had the right of way and avoided an accident only by braking. Tr. at p. 9 and State's Ex. 1 (Hein, Ryan 22TRC691), Supplemental Case Report at p. 1 (Oldham). While trying to locate Hein's car, the police then encountered an off-duty police officer who had observed Hein driving erratically. This was within a few minutes after the initial encounter. When Hein got out of his car and approached the off-duty officer, Hein was stumbling and the officer concluded Hein was intoxicated. All this was communicated to the UDPD police. And, when Officer Oldham spoke with Hein, she detected a strong smell of alcohol; she also said that Hein's eyes were glassy and that he slurred his speech. These facts, even without the sobriety test, would have caused a reasonably prudent person to believe that Hein had committed a crime. *Adams*, 2d Dist. Montgomery No. 24184, 2011-Ohio-4008, at ¶ 7. Accordingly, the City's third assignment of error also has merit and is sustained.

## V. Conclusion

{¶ 54} All of the City's assignments of error having been sustained, the judgment of the trial court is reversed, and this cause is remanded for further proceedings.

. . . . . . . . . . . . .

TUCKER, J. and EPLEY, J., concur.